UNITED STATES, Appellee

v

MARION M. GREENE, Airman Basic, U. S. Air Force, Appellant

20 USCMA 232, 43 CMR 72

No. 23,042

December 24, 1970

*Lieutenant Colonel Norman L. Paul* argued the cause for Appellant, Accused. With him on the brief were *Colonel Bertram Jacobson* and *Major William H. Seckinger*.

*Lieutenant Colonel Henry R. Lockington* argued the cause for Appellee, United States. With him on the brief was *Colonel James M. Bumgarner*.

## Opinion of the Court

FERGUSON, Judge:

The codal violations of which Greene was convicted are not related to the issues before this Court. Rather, we are concerned with the composition of the court-martial selected to try the accused and with whether the accused was denied his right to an impartial post-trial review. Because of the action we take in this case we need not reach the second issue. At the outset of trial, during the Article 39(a) session, defense counsel stated that although the accused was requesting that he be tried by the military judge alone, he was doing so reluctantly and only because of "certain infirmities" which he found in the composition of the court selected to try him. By way of explanation, defense counsel presented the following information:

(1) Special Order AB–5, dated November 25, 1969, by which this general court-martial was convened, by the Commanding General, Fifteenth Air Force, consisted only of high ranking commissioned officers— three colonels and six lieutenant colonels.

(2) This exclusive selection was based upon paragraph 6 of a memorandum dated October 23, 1969, from the Staff Judge Advocate, Fifteenth Air Force to all Base Judge Advocates (Appellate Exhibit I) which stated:

"Review of our courts and boards leads me to serious consideration of use of only lieutenant colonels and colonels as members, and majors or above as judge and legal advisor. I commend this consideration to you and your commander. Such people should possess the mature judgment which is needed in actions which

play an important part in establishing the standards of the military community."

(3) A stipulation of fact reflecting the manner of selection of the court appointed in Special Order AB–5 (Appellate Exhibit II):

"It is hereby stipulated and agreed between trial counsel and defense counsel with the express consent of the accused that:

"1. In response to the letter dated 23 October 1969 from the Staff Judge Advocate, Fifteenth Air Force, the Base sent to Fifteenth Air Force a panel of lieutenant colonels and colonels. That the court-martial appointed by Special Order AB–5, Headquarters Fifteenth Air Force, has as members those persons whose names were sent to Fifteenth Air Force in response to the Fifteenth Air Force Staff Judge Advocate's letter and policy contained therein;

"2. In the past, persons in the rank of second lieutenant, first lieutenant, captain and major as well as officers of higher rank, have sat as members of general courts-martial at March Air Force Base;

"3. The general court-martial appointed by Special Order C–37, Headquarters Fifteenth Air Force, 9 May 1969, had as members a major and two captains, Captain James F. Hogan, a Negro, and Captain Alan E. Bent who has left the service and returned to civilian life;

"4. The general court-martial appointed by Special Order C–21, Headquarters Fifteenth Air Force, had as members a major, a captain, a first lieutenant and two second lieutenants."

Defense counsel, in response to an inquiry by the military judge, advised the latter that the purpose of the stipulation was to indicate that prior to the issuance of the memorandum of the Staff Judge Advocate it had been the custom at March Air Force Base for officers in the grades of second lieutenant through major to sit as members of courts-martial.

Defense counsel contended, before the military judge, that these exhibits reflect command influence over courts-martial, by eliminating first lieutenants, captains, and majors, from sitting as court members and, in effect, they express dissatisfaction by the Fifteenth Air Force with results of courts-martial held at Fifteenth Air Force bases. He also contended that by systematically excluding young officers from the court, the membership thereof has been restricted solely to professional career officers, and the courts have thus been denied the "valuable thoughts and ideas" which the younger officers, many of whom are citizen soldiers, could bring to the discussion process. He further asserted that the memorandum, which dictated the composition of the court, reflected an element of possible racial discrimination inasmuch as the chance that a Negro officer being selected as a member has been effectively reduced. "There are few, if any, Negro lieutenant colonels or colonels on this base. The percentage of Negro junior officers is much higher than the percentage of Negro senior officers." Appellate Exhibit III, an article from page 3 of the Air Force Times, dated December 3, 1969, containing some statistical data on the number of Negroes in each officer grade, was introduced in support of this contention.

The prosecution rejected the claim of command influence and argued that the court was selected in accordance with Article 25(d)(2), Uniform Code of Military Justice, 10 USC § 825, and paragraph 4d, Manual for Courts-Martial, United States, 1969 (Revised edition); that is, "they were chosen as best qualified by virtue of age, education, training, experience, length of service, and judicial temperament." According to trial counsel, the policy statement enunciated by the Staff Judge Advocate, in his memorandum, complied with the Manual provision

234

which requires the convening authority to appoint mature officers, taking into consideration their training and education, that these individuals would be better able, than younger officers, to apply military justice on a fair basis. He contended that the military judge should reject the request for trial by judge alone and impanel the court and try the case before the officers designated in the convening order.

Finding accused's basis for the request for trial by military judge alone unique, the judge suggested that he would consider a motion from defense counsel for appropriate relief from being tried until a court could be convened, as was the previous practice, where all officers in all grades are eligible to sit as members of the court. Upon receipt of the motion he recessed the hearing and directed trial counsel to telephonically ascertain from the convening authority whether the latter, in the selection of the present court members, did in fact consider officers of lower grades than colonel and lieutenant colonel when making his selection.

Upon reconvening, trial counsel advised that he had contacted the convening authority's representative, the Staff Judge Advocate at Fifteenth Air Force and was advised that, "Consideration of members for Staff Judge Advocate recommendation to the Commander, Fifteenth Air Force, did not go outside the list of officers submitted by the special court-martial convening authority." The military judge, interpreting this to mean that the convening authority did not consider officers other than those named on the appointing orders, granted the defense motion for appropriate relief and ordered trial counsel to inform the convening authority that he "consider the appointment of officers of other grades than strictly colonels and lieutenant colonels to this court." He made it abundantly clear that he was aware of the discretion vested in the convening authority to appoint the members of the court whom he wishes to sit, and that he is not bound to appoint officers of any particular grade, but the consideration given to such appointments should not exclude consideration of any officers except colonels and lieutenant colonels.

When the court reconvened, defense counsel announced that he and trial counsel had entered into the following stipulation of fact:

"DC . . . [T]hat Sergeant Bohn at that time conveyed a suggested list of officers to sit on the general court-martial from the base; that the suggested panel consisted of two second lieutenants, one first lieutenant, one captain, one major, two lieutenant colonels and three colonels; that Sergeant Bohn was directed by an Assistant Judge Advocate of Fifteenth Air Force to return to the base and return with a panel of officers which included only lieutenant colonels and colonels."[1]

The judge thereupon inquired:

"MJ Trial Counsel, are you in a position for the record to indicate what action the convening authority has taken on my request to end this situation?

"TC Yes sir, I am. I have been advised that the Base Staff Judge Advocate, Lieutenant Colonel Smith, conferred with the Base Commander, our special court-martial convening authority, Colonel Knapp, and he reconsidered the possibility of suggesting a panel to the convening authority which included, among other things, officers in the rank of major, captain, first and second lieutenant, and decided nevertheless to forward the same panel as appears on Special Order AB–5, a list of members on that panel, to the convening authority for consideration in accordance with your request that it be so considered. In that light, the convening authority has reconsidered the matter, and in accordance with Article 25 of the Uniform Code of Military Justice has decided that the officers who are

---

[1] An affidavit from Sergeant Bohn, attached to the brief of appellate defense counsel, may be found in the Appendix to this opinion.

mentioned on Special Order AB–5 are most qualified under that particular article, and deems it unnecessary in his judgment to make any change and appoint additional members to Special Order AB–5.

"MJ Are you going to have some documentary backup for that?

"TC Yes sir, I'm currently awaiting now a letter from Fifteenth Air Force Staff Judge Advocate, a letter forwarded by Lieutenant Colonel Smith, Base Staff Judge Advocate, and forwarded to the convening authority with the special court-martial convening authority's indorsement thereon spelling out their determination in the manner I have phrased it.

"MJ All right, when you receive that document we will have it marked as an appellate exhibit.[2]

"I think this would, under the circumstances, be an appropriate time to determine whether or not the accused desires to be tried by military judge alone.

"DC Your Honor, in view of the letter of the Fifteenth Air Force Staff Judge Advocate of 23 October 1969 and the fact that on 5 November 1969 a panel consisting of colonels, lieutenant colonels, a major, a captain and lieutenants was rejected by the Office of the Staff Judge Advocate, Fifteenth Air Force, in view of the further fact consisting of the fact that only colonels and lieutenant colonels were later appointed by Special Order AB–5 and the fact that after the reconsideration by Fifteenth Air Force at your direction that the same court remains, in view of these facts, the accused would at this time renew his request for trial before the military judge alone.

"MJ All right."

Thereafter the judge thoroughly explained to the accused the meaning of trial by judge alone and elicited from him the fact that "if there were one or more members appointed to this court in the grade of major or lower" he would prefer to be tried by a court of members and not by the judge alone. Upon completing his explanation the judge stated, "Well, I'm satisfied that the accused understands the meaning and effect of a request for trial by military judge alone. Under the circumstances, in view of the fact that the convening authority has in fact considered other officers and elected to leave the court as it stands, I will approve the accused's request for trial by military judge alone. It will be attached to the convening orders."

The Court of Military Review, which also considered the issue before us, affirmed the conviction on the ground that the selection of *only* senior commissioned officers to sit as members of the court did not violate the law (Article 25(d)(2), Code, supra) and was in accord with this Court's opinions upholding a similar limitation in the selection of only senior noncommissioned officers in those cases where an accused has requested that enlisted men be included in the membership of the court. See, generally, United States v Crawford, 15 USCMA 31, 35 CMR 3 (1964); United States v Glidden, 15 USCMA 62, 35 CMR 34 (1964); United States v Ross, 15 USCMA 64, 35 CMR 36 (1964). However, the court stated that, "Although we find that selection of members solely from a list of senior officers is proper, we hasten to affirm our certainty that the qualities necessary for court membership are not necessarily limited to senior personnel."

Article 25(d)(2), Code, supra, provides in pertinent part that "the convening authority shall detail as members . . . [of a court-martial] such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." This codal provision should not be read in a vacuum, however, for the Congress of the United States, has by virtue of the passage of Article 25(a)

[2] See Appendix.

236

and (b), Code, supra, made eligible for membership on courts-martial "[a]ny commissioned officer on active duty" and "[a]ny warrant officer on active duty" if, in the latter instance, the accused is of a lesser grade than that of commissioned officer.

In the case at bar it is clear, from Sergeant Bohn's affidavit, that the original panel proposed for this court by the special court-martial authority, Colonel Knapp, consisted of officers of the grade of lieutenant through colonel as was the then general practice. The Chief of Military Justice in the Office of the Staff Judge Advocate, Fifteenth Air Force, apparently acting on the basis of the above-mentioned memorandum from his immediate superior, returned the proposed panel and directed that a new panel be submitted consisting only of officers of the grade of lieutenant colonel and above. No reason was given for the rejection *by the Chief of Military Justice* of the two second lieutenants, one first lieutenant, the captain or the major, all of whom were listed in the first panel and who, obviously, had been considered by the special court-martial convening authority as "best qualified . . . [to serve as court members] by reason of age, education, training, experience, length of service, and judicial temperament." Had they not been so considered, they would not have been originally selected by Colonel Knapp. Later, at the direction of the military judge, Colonel Knapp, who had already complied with the request of the Chief of Military Justice and submitted a new panel consisting of only lieutenant colonels and above, reconsidered his second action and decided to forward the same panel. The convening authority, the Commanding General, Fifteenth Air Force, decided that these officers were "most qualified" and deemed it unnecessary in his judgment to make any change in the membership of the convening order. The question posed by this determination is whether the decision of Colonel Knapp was wholly unfettered, as it should be, or was it influenced by the rejection of his original panel

by the Office of the Staff Judge Advocate of the Commanding General, Fifteenth Air Force, and by the aforementioned memorandum from that same office on the composition of courts-martial.

We note with interest that the Staff Judge Advocate, on the date this case was reconvened, withdrew paragraph 6 of his memorandum (see Appendix). As he stated in his letter of withdrawal:

". . . In a recent trial the judge implied that the suggestion contained in that paragraph was subject to interpretation which could result in 'systematically excluding considering officers below the grade of lieutenant colonel' as court members. The paragraph was not intended as such a mandate."

Whether so intended or not, his Chief of Military Justice believed that it was to such an extent that he summarily rejected the original panel submitted by Colonel Knapp. No other explanation for his action is evident from this record. Nor is there any evidence that Colonel Knapp was aware of the withdrawal and explanation by the Staff Judge Advocate. Since the decision of Colonel Knapp was announced by trial counsel just after 8:45 a.m. on December 2d, and the letter of the Staff Judge Advocate was dated the same day, it can reasonably be concluded that he was not aware of its contents.

In United States v Hedges, 11 USCMA 642, 29 CMR 458 (1960), this Court upheld a reversal by the board of review which found that the composition of the court-martial in that case had the distinct appearance of being " 'hand-picked' by the Government," since seven of the nine members had primary duty assignments involving some aspect of crime prevention, detection, or control, and because several matters developed in the voir dire examination of the court members tended to support the view that the court was packed against that accused. A majority of this Court in *Hedges*

**237**

found it unnecessary in their opinion to consider whether a court-martial composed entirely of personnel engaged in law enforcement work, or in staff operations for the convening authority, *itself* gave the appearance of a packed court. Cf. United States v Deain, 5 USCMA 44, 17 CMR 44 (1954). However, Judge Latimer, in a separate concurring opinion in *Hedges,* believed that the composition of the court-martial alone violated the spirit of Article 25(d)(2), Code, supra. He held that the law officer erred in not granting defense counsel's motion for a mistrial, which was based on the duty status of the court members, and thus joined in the decision to uphold the reversal by the board of review.

United States v Crawford, 15 USCMA 31, 35 CMR 3 (1964), presented a problem similar to that encountered in this case. In *Crawford,* the question was whether the method by which *enlisted* court members were selected discriminated against the lower enlisted ranks in such a way as to threaten the integrity of the court-martial system and violate the Uniform Code of Military Justice. A majority of this Court in *Crawford* found no evidence in that case of any desire or intention to exclude any group or class on irrelevant, irrational or prohibited grounds. I dissented in *Crawford* because, contrary to the view of my brothers, I found evidence in the record that the convening authority impermissibly limited himself to senior noncommissioned officers in choosing enlisted court members in violation of Article 25, Code, supra. While disagreeing as to the import of the evidence, the Chief Judge and I were in agreement, in *Crawford,* that "nothing in the 'Uniform Code expressly limits membership on a court-martial to persons of a particular rank' and that Code, supra, Article 25, 'implies all ranks and grades are eligible for appointment.'" (*Id.,* at page 56.)

Congress, in its wisdom, made all commmissioned officers eligible for consideration to serve on courts-martial. It conferred upon the convening authority the sole discretion to select from this group those who are "in his opinion, . . . best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament." The only other condition in the statute, which is not relevant to the problem before us, is the prohibition against appointing any person as a court member who was the accuser, a witness for the prosecution, or who had acted as investigating officer or counsel in the same case. Code, supra, Article 25(d)(2). Not a single condition is inserted with regard to their rank or position within the military community, except those very general and personal factors which are to be considered by the convening authority in the exercise of his discretion.

Turning to the facts before us, we are not convinced that an improper standard was not used for the selection of the members of this court. In this regard we note the following: (1) The questionable memorandum from the Staff Judge Advocate, Fifteenth Air Force, rescinded because of the objections raised at this trial; (2) the action of the Chief of Military Justice, Fifteenth Air Force, in rejecting the original panel selected by the special court-martial authority; (3) the latter's direction that a new panel consisting only of lieutenant colonels and above be submitted for consideration; (4) the resulting composition of the court both before trial and after objections by trial defense counsel; (5) the fact that, as agreed by the prosecution at trial, the composition of this court was a clear departure from past practices and was dictated solely by the contents of the Staff Judge Advocate's memorandum. Together, these factors raise at least a reasonable doubt as to whether the hurried decision to remain with this court was an unfettered one. Such doubt must be resolved in favor of the accused. Cf. United States v McIntosh, 12 USCMA 474, 31 CMR 60 (1961). In such circumstances, we agree with that portion of the decision of the Court of Military Review which states:

"We start by recognizing that an accused has an absolute right to trial before a properly constituted court with members. Accordingly, this accused's conviction cannot stand if he abandoned his right (and was tried by military judge alone) to avoid trial before an improperly selected panel Article 16, Code, supra; Manual for Courts-Martial, supra, paragraph 4; United States v Hedges, 11 USCMA 642, 29 CMR 458 (1960); cf. United States v Beer, 6 USCMA 180, 19 CMR 306 (1955) . . . ."

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.

## "AFFIDAVIT

"I, SMSgt Walter L. Bohn, NCOIC, Office of the Staff Judge Advocate, 22d Combat Support Group, March AFB, California, do make the following statement concerning my recollection of the circumstances concerning the submission of the court panel to the General Court-Martial jurisdiction and accompanying the Article 32 Investigation of the Charges submitted against AB Marion Greene, then a member of the 22d Security Police Squadron:

"On or about 5 November 1969, which is the date of the transmittal of the Investigation by the Special Court-Martial Jurisdiction to 15 AF, I delivered the Article 32 Investigation and proposed court panel to the Administrative Section of the General Court-Martial jurisdiction. That court panel consisted of, to the best of my recollection, members ranging in grade from Colonel down to and including Lieutenant's.

"Subsequent to delivery, either that afternoon or the following day, I received a call from the Chief, Military Justice Section, Hq 15AF, Major Harper, advising me to come and pick up the proposed court panel and to advise the Staff Judge Advocate of our office, that the Special Court-Martial Convening authority should submit a new proposed court panel consisting only of Officers of the grade of Lt Colonel and above.

"I picked up the court panel from his office and returned it to the Staff Judge Advocate of our office and relayed the information concerning the call from 15 AF to him.

/s/ Walter L. Bohn
WALTER L. BOHN, SMSgt, NCOIC

STATE OF CALIFORNIA ⎫
                       ⎬ ss
COUNTY OF RIVERSIDE ⎭

Sworn and subscribed to at March Air Force Base, California, this 17th day of July 1970.

/s/ F. B. Austin
F. B. AUSTIN, Notary Public
(SEAL) Cal. COM. EXP. SEPT. 18, 1971—
RIVERSIDE CO.
22d Cmbt Spt Gp (SAC) (BJA) M.A.F.B., Calif."

## APPENDIX

## "DEPARTMENT OF THE AIR FORCE
Headquarters Fifteenth Air Force (SAC)
March Air Force Base, California, 92508

2 December 1969

Reply to

ATTN OF: JA
SUBJECT: General Court-Martial— United States v Greene

TO: Colonel Roy D. Adcock, Military Judge Special Order AB–5, Hq 15AF, 25 Nov 1969

1. Pursuant to your oral request of 1 December 1969, consideration has been given to appointment of officers in the grades of major, captain, first lieutenant, and second lieutenant, as members of the court to hear evidence in the case of US v Greene. Having reconsidered the question of appointment of additional or substitute officers in the above referred to grades to act as court members in the above styled case, the convening authority finds the present membership of the court as promulgated in Special Order

**239**

AB–5, dated 25 November 1969, nonetheless appropriate.

2. The present members of the court as designated in Special Order AB–5 dated 25 November 1969 were originally selected in accordance with Article 25(d)(2), Uniform Code of Military Justice, as best qualified on the basis of their age, education, training, experience, length of service, and judicial temperament.

3. For your information the attached letter to all base judge advocates, this command, subject: Military Justice, dated 2 December 1969 (Atch 1) has been dispatched.

4. Attachment 2 contains the recommendations of the officer exercising special court-martial jurisdiction concerning composition of the court-martial membership in the case of Airman Marion M. Greene, which recommendations were considered in the convening authority's reconsideration of the question of appropriate membership.

FOR THE COMMANDER

/s/ Everett Caselman

EVERETT CASELMAN, JR, Col, USAF

Acting Staff Judge Advocate

2 Atch

1. Ltr, 15AF (JA), 2 Dec 69, subj: Military Justice
2. Ltr, 22 CSGp (BJA), 1 Dec 69, subj; Composition of CM Panel in the trial by GCM of Amn Marion M. Greene

Peace . . . . is our Profession
Appellate Exhibit IV."

"DEPARTMENT OF THE AIR FORCE
Headquarters 22d Combat Support Group (SAC)
March Air Force Base, California, 92508

1 December 1969

Reply to
ATTN OF: BJA

SUBJECT: Composition of Court-Martial Panel in the trial by General Court-Martial of Airman Marion M. Greene

TO: 15AF (C) and (JA)

**240**

Pursuant to the issue raised in the subject case as to the composition of members of the court-martial appointed to try subject airman, and pursuant to your request that the list of proposed members be reconsidered, the following matters are submitted herewith:

The Commander, 22d Combat Support Group, has in accordance with Article 25(d)(2) and your request reconsidered the membership of subject court as previously submitted to your headquarters and as contained in Special Order A–5, dated 25 November 1969, which reconsideration has included the propriety, feasibility, availability and desirability of including officers in the grade of major, captain, first lieutenant and second lieutenant, and it has been concluded by the Commander, 22d Combat Support Group that in view of the above the members listed on Special Order A–5, dated 25 November 1969, are in his opinion the best qualified for such membership by reason of age, education, training, experience, length of service and judicial temperament, and further recommends such members for inclusion on the court panel for the trial of subject airman.

FOR THE COMMANDER

/s/ George W. Smith, Jr.

GEORGE W. SMITH, JR., LT COL, USAF

Staff Judge Advocate."

"DEPARTMENT OF THE AIR FORCE
Headquarters Fifteenth Air Force (SAC)
March Air Force Base, California, 92508

2 December 1969

Reply to
ATTN OF: JA

SUBJECT: Military Justice

TO: All BJAs, this command

1. Please refer to my letter of 23 October 1969 to all BJAs, subject: Duty as Military Judge.

2. Paragraph 6 thereof is withdrawn. In a recent trial the judge implied that the suggestion contained in that paragraph was subject to interpretation which could result in 'systematically excluding considering officers below the grade of lieutenant colonel' as court members. The paragraph was not intended as such a mandate.

/s/ Dwight R. Rowland
DWIGHT R. ROWLAND, Colonel, USAF
Staff Judge Advocate."

Chief Judge QUINN concurs.

DARDEN, Judge (concurring):

Out of an abundance of fairness to the officer who originated the guidance in controversy, I believe it should be noted that his objectionable recommendation followed other comments, one of which was:

"You should be aware that the Commander, 15AF, in general, does not like undesirable discharge and bad conduct discharge of young airmen. I do not presume to amplify that statement. Certainly, however, it should be considered in a close case where a better type of discharge might obviate a costly hearing. One matter which is examined closely here for *various* reasons is the record in the discharge file of possible mishandling or injustice to an individual in early stages of continuous misconduct. Harsh first punishment, like loss of stripes, can lose a good airman. Use of the term 'counselled' is seldom adequate to show specific actual guidance and assistance, which is expected."

Crediting the originating officer with the good motivations of avoiding harsh first punishments, undesirable discharges, and bad-conduct discharges, I still concur in the principal opinion, for the limitation on the court's composition remains impermissible.