UNITED STATES, Appellee

v

JAMES E. KEMP, Private First Class,
U. S. Army, Appellant

22 USCMA 152, 46 CMR 152

No. 25,893

February 23, 1973

*David F. Addlestone, Esquire,* argued the cause for Appellant, Accused. With him on the brief were *Joseph Remcho, Esquire, Colonel Arnold I. Melnick, Captain Mark L. Tuft,* and *Captain Arpiar G. Saunders, Jr.*

*Captain R. Craig Lawrence* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Captain Richard L. Menson,* and *Captain Glenn R. Bonard.*

DARDEN, Chief Judge:

This case presents the question whether the special court-martial that tried the accused lacked jurisdiction because of the manner in which its members were selected. Appellate defense counsel contend that the members were not personally chosen by the convening authority and that he did not apply the standards set forth in the Uniform Code of Military Justice, Article 25, 10 USC § 825.

Before trial, defense counsel filed with the convening authority a motion for discovery that, among other things, sought disclosure of (1) the identity of (a) the person who made "the final decision as to each member of the court," (b) any person who "at any stage in the selection process recommended or disapproved each member for service on the court," (c) the person who prepared the list, (2) the standards used in the selection process, (3) the number of officers and type of units from which the list of available members was drawn, (4) the names and grades of officers on the list, (5) copies of any regulations or directives used in the selection process, and (6) the nature of any random selection process that might have been used.

Counsel also moved the convening authority that the court members be selected at random in a manner similar to that used in the United States district courts or by one of several alternative methods.

In response to the discovery motion, the staff judge advocate on behalf of the convening authority advised counsel that court members were chosen from a list of prospective nominees furnished the commanding general by the Office of the Assistant Chief of Staff for Personnel. In the accused's case, the names of proposed members of the court were obtained by a Captain Lloyd Socky of that office by a random selection of cards from the master personnel file. Socky was told to furnish a list of nominees consisting of two lieutenant colonels, three majors, and two company grade officers.

Captain Socky delivered the list to the staff judge advocate, who took it directly to the commanding general. The latter "personally selected the present members of the court from that list." The staff judge advocate also informed the defense counsel that both he and the Assistant Chief of Staff for Personnel "will be happy to have you examine our files regarding the nomination of members for courts-martial."

The motion for a random selection of court members conforming to the practice in the United States district courts or by other random means was denied with the notation that the convening authority desired "to continue to follow the spirit of Article 25(d)(2), UCMJ."

The court-martial ultimately appointed to hear the accused's case consisted of two lieutenant colonels, three majors, and two captains. Two of the members, both in the grade of major, were absent from the trial.

During Article 39(a) proceedings, defense counsel expressed satisfaction with the response to his motion for discovery but renewed his request for random selection of the court members. The military judge denied the motion.

Appellate defense counsel contend that the convening authority did not personally select the court members, having in reality permitted Captain Socky to do so without any guidance as to the standards set down in Article 25. The subsequent appointment of the persons selected by Socky they consider to be no more than ratification by the convening authority of the former's action. Moreover, counsel argue that personal selection by the convening authority would impose an enormous burden on that officer and that his application of the criteria laid down in Article 25 would result in an unconstitutional deprivation of due process, based on long-standing case

law applying to the selection of jurors in civilian criminal trials.

We are urged therefore to utilize our supervisory power over military justice to provide a system of truly random selection of court members until the article can be appropriately amended.

In response, the Government points out that the convening authority personally appointed the court that tried the accused, that Captain Socky's actions were no more than a part of normal staff work, and that this Court has expressly approved similar procedures in United States v Crawford, 15 USCMA 31, 35 CMR 3 (1964). The Government also argues that consideration of the constitutionality of the selection process is beyond the scope of our grant of review and that any attempt to substitute another procedure should be directed to the Congress rather than here.

■ This Court has never considered the scope of its review to be limited by the wording of a particular grant of review. Cf. United States v Gallagher, 15 USCMA 391, 35 CMR 363 (1965). Moreover, our grant in this case was directed to the propriety of the method by which the court-martial that tried the accused was selected and we regard appellate defense counsel's arguments as being well within the scope of that inquiry. Nonetheless, we agree that this Court sits as a judicial body which must take the law as it finds it, and that any substitution of a new system of court selection must come from the Congress, to which many of the accused's arguments could be more appropriately addressed.

■ Courts-martial are not a part of the judiciary of the United States within the meaning of Article III of the Constitution. *Ex parte* Quirin, 317 US 1, 87 L Ed 3, 63 S Ct 1-2 (1942). They derive their authority from the enactments of Congress under Article I of the Constitution, pursuant to congressional power to make rules for the government of the land and naval forces. Consequently, the Sixth Amendment right to trial by jury with accompanying considerations of constitutional means by which juries may be selected has no application to the appointment of members of courts-martial. *Ex parte* Quirin, supra at 43–45; O'Callahan v Parker, 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969); DeWar v Hunter, 170 F2d 993 (10th Cir 1948), *cert denied*, 337 US 908, 93 L Ed 1720, 69 S Ct 1048 (1949). Such appointment is governed by the provisions of Article 25 and we turn to it for further consideration of the controversy presented here.

Article 25(d)(2) provides:

"When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament. No member of an armed force is eligible to serve as a member of a general or special court-martial when he is the accuser or a witness for the prosecution or has acted as investigating officer or as counsel in the same case."

In United States v Allen, 5 USCMA 626, 18 CMR 250 (1955), this Court held that Article 25 required the convening authority personally to select the members of a court-martial that he appointed. In United States v Crawford, supra, enlisted members were selected by the convening authority largely from a list of senior, responsible, and available noncommissioned officers furnished by his adjutant general. Dispute their having been chosen at random from personnel rosters, this Court approved their personal appointment by the convening authority.

In United States v Pearson, 15 USCMA 63, 35 CMR 35 (1964), the practice of obtaining lists of prospective court members senior in grade to the accused, from which members of the panel could be selected by the convening authority, was approved, the Court finding nothing "to cast

doubt on the propriety of the selection process." *Id.*

United States v Greene, 20 USCMA 232, 43 CMR 72 (1970), also involved submission to the convening authority of a list of proposed court members from which he would personally make his final selection. In that case, a first submission of a list of officers ranging in grade from colonel to second lieutenant was rejected by the Chief of Military Justice on the basis that a staff judge advocate policy letter directed that only colonels and lieutenant colonels be considered for duty as members of courts-martial. A new list was submitted, limited to those grades, and the court was appointed from that list. On objection by defense counsel, the military judge directed the officer submitting the lists to reconsider the matter without regard to grade limitation and he determined that the second list should once more be forwarded. The convening authority also determined that these officers were best qualified to serve. Reviewing these factors, we concluded that the action of the officer submitting the list was not unfettered in view of the erroneous advice of the staff judge advocate that the senior grade of an officer should be the governing consideration in selecting court members under Article 25.

■ In each instance, we have recognized that the convening authority, while charged with the personal responsibility for the selection of court members, must have assistance in the preparation of a panel from which to choose those members. In order to carry out his function under Article 25, he must necessarily rely on his staff or subordinate commanders for the compilation of some eligible names. In some cases, as in *Greene*, the subordinate who is to furnish the names of prospective members has been impermissibly misled into believing that only one factor is to be considered in compiling the list. In others, the subordinate properly was left free or told only in the most general way what was to guide him in nominating personnel for court duty.

While some may term this a "random selection" of court members, in our view such a procedure amounts to no more than a preliminary screening of available members for the information of the convening authority. Under the provisions of Article 25 the responsibility and duty of selecting those best qualified for service under the standards set forth in the article remain with that officer. United States v Crawford, supra at 47, 35 CMR at 13 (Kilday, J., separate opinion).

The record before us establishes that this is what occurred here. The convening authority directed Captain Socky to obtain a list of names for consideration as court members. Unlike the situation in *Greene*, no controlling weight was given to the factor of grade by any of his subordinates. Instead, Socky was told to select both field and company grade officers. The list was submitted to the convening authority, who personally chose to appoint those officers to the court. And despite the broad discovery afforded defense counsel on the selection process, we find no evidence that the convening authority applied any standard in approving the panel other than those laid down in the Code. On the contrary, the convening authority's denial of the accused's request for a truly random selection of court members established his awareness of his responsibility, for in that denial he declared his desire "to continue to follow the spirit of Article 25(d)(2), UCMJ."

We conclude therefore that no basis exists in this record for the contention that the accused's court panel was not properly and personally selected by the convening authority. In so holding, we are not unaware that attractive arguments can be made for a truly random selection method akin to those utilized in civilian courts. In fact, related proposals were made to the Congress but were rejected in favor of Article 25. Hearings on HR 2498 Before a Subcommittee of the House Committee on Armed Services, 81st Cong, 1st Sess 728–729 (1949).

On the other hand, sound contentions can be made that the selection process should be left as it is. It was to the convening authority that Congress entrusted the decision as to its implementation. We are not disposed to gainsay that legislative decision.

We hold therefore that it is not error for a convening authority to rely upon his staff and subordinate commanders to nominate prospective court members to be considered by him for ultimate appointment to a particular court-martial in light of their qualifications under the criteria laid down in Article 25, Uniform Code of Military Justice, 10 USC § 825.

The decision of the United States Army Court of Military Review is affirmed.

Judges QUINN and DUNCAN concur.