**UNITED STATES, Appellee,**

v.

**Specialist Norman G. NIXON, 178–60–9620, United States Army, Appellant.**

**ACMR 8800626.**

U.S. Army Court of Military Review.

29 June 1990.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Mr. Walter L. Boyaki, Esquire, Captain Scott A. Hancock, JAGC, Captain W. Renn Gade, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Martin D. Carpenter, JAGC, Captain Denise J. Arn, JAGC, Captain Jody M. Prescott, JAGC (on brief).

Before the Court Sitting EN BANC.

## OPINION OF THE COURT ON RECONSIDERATION

KUCERA, Senior Judge:

On 11 May 1990, a panel of this court on its own motion reconsidered its unpublished opinion dated 23 March 1990. Subsequently, the government petitioned the court for reconsideration *en banc.* The court as a whole granted the government's request on 6 June 1990 and vacated its decision of 11 May 1990.

Contrary to his pleas, a military judge sitting as a general court-martial convicted the appellant of an indecent act with a child under the age of sixteen in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ].[1] The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

The appellant assigns, *inter alia,* the following error:

THE MILITARY JUDGE COMMITTED JURISDICTIONAL ERROR WHEN HE REFUSED TO ORDER THE APPOINTMENT OF NEW ENLISTED PERSONNEL WHEN THE DEFENSE ESTABLISHED THAT THE ENLISTED MEMBERS WERE CHOSEN BASED ON RANK.

The evidence of record shows that the staff judge advocate (SJA) requested from the major subordinate commands the names of twenty soldiers serving in the pay grade of E9, ten serving in the pay grade of E8, ten serving in the pay grade of E7, ten serving in the pay grades of E6 to E5, and ten serving in the pay grades of E5 to E1 as nominees to sit on courts-martial with enlisted members. The major commands responded by nominating twenty-one soldiers serving in the pay grade of E9, nine serving in the pay grade of E8, six serving in the pay grade of E7, six serving in the pay grade of E6, four serving in the pay grade of E5, seven serving in the pay grade of E4, and one serving in the pay grade of E1 for a total of fifty-four enlisted nominees. The SJA submitted the names of all fifty-four nominees to the convening authority with the advice that the convening authority was not limited in his selection to the fifty-four nominees and that he may select anyone who, "in his opinion," is best qualified to sit on the court by reason of "age, education, training, experience, length of service, and judicial temperament." UCMJ art. 25(d)(2), 10 U.S.C. § 825(d)(2). The SJA further recommended that the convening authority select twelve enlisted members. Acting on the SJA's advice, the convening authority personally

---

1. Initially, appellant requested to be tried by a panel with enlisted members. When the military judge denied his motion requesting that a new panel be selected, he chose to be tried by a military judge alone.

selected eleven enlisted members in the pay grade of E9 and two in the pay grade of E8 whose names were then placed on a standing list from which to select courts-martial panel members. When later the appellant requested a trial with enlisted members, the convening authority selected from that standing list four enlisted members in the pay grade of E9 and two in the pay grade of E8 who then were detailed to sit on appellant's case.

The convening authority testified that in his selection of court members, he considers the terms of Article 25 of the UCMJ and evaluates potential members' "age, education, training, experience, length of service and judicial temperament." In accordance with his responsibility, which he takes "very very seriously," he tries to pick those individuals that he feels would assure the accused the "fairest trial".[2] In his "best judgment as the Convening Authority, with the sincere desire to ensure that justice is maintained in a fair and impartial way for everybody", he mentally passes the prospective court members through the six criteria of Article 25, UCMJ and, based on his experience, he picks those who best satisfy such criteria. His selection process is "completely rank immaterial" based only upon criteria of Article 25, UCMJ.

Article 25(d)(2), UCMJ, in part provides that the convening authority shall detail to a court such panel members as, *"in his opinion,* are best qualified for the duty by reason of age, education, training, experience, length of service and judicial temperament" (emphasis added). In *United States v. Crawford,* 35 C.M.R. 3, 11 (C.M.A.1964), the Court held "[a] method of selection which uses criteria reasonably and rationally calculated to obtain jurors meeting the statutory requirements for service is proper." That Court also took judicial notice that many in the lower enlisted ranks were qualified to serve on courts-martial. However, the Court found a close correlation between the enumerated criteria of Article 25, UCMJ, and seniority of rank, and on that basis upheld the staff judge advocate's request for senior enlisted members. The Court also found that there was no intent to exclude any group or class on "irrelevant, irrational, or prohibited grounds." *Id.* at 12. As Chief Judge Quinn observed, it is permissible to anticipate that the senior enlisted ranks will more readily provide a large number of persons possessing the qualities expected of court members. "The senior noncommissioned ranks provided a convenient and logically probable source for eligibles. To refer first to those ranks for prospective members is not an impermissible choice (citation omitted)." *Id.* In appellant's case, the convening authority did just that. If Article 25(d)(2), UCMJ, means what it says, the military judge correctly denied the defense's motion to dismiss for lack of

---

2. The following is an excerpt from the convening authority's testimony:

A: Somebody may ask why there aren't any PFC's on that panel. As I take all those factors in Article 25 of the Uniform Code of Military Justice and I pass a PFC through them, it's very difficult for me to find youngsters who, in fact, measure up to those criterion. So, my judgement is justice is better served and that the individual is better served if you have people who meet those criterion, so I try to pick people who do. In some other court cases I have picked a staff sergeant and I have picked a sergeant first class, so It's [sic] not limited exclusively to sergeant majors [sic] and master sergeants.

. . . . .

Q: Do you ever consider rank independently as opposed to how it impacts on the other

qualifications you've discussed in Article 25?

A: No. I would just add one thing to you though, in that when I select these courts, I really want to select people that have the freedom to act as they feel, independent of any outside pressure, and I would tell you that a sergeant major or a command sergeant major has very very little to lose. Those are the individuals who have the most freedom of responsibility.

. . . . .

A: ... Anybody who knows a sergeant major or command sergeant major in this room knows that command sergeant majors or sergeant majors are not intimidated by anybody, at any time, in any way, as a general rule. They do think their own minds too.

Record of Trial at 42–43.

jurisdiction due to improper selection of enlisted members to the court. The appellant has not shown any illegal or improper motive in the nomination, selection, or detail of enlisted court members. Any question about the convening authority's motive for selecting the members in this case was dispelled by the convening authority's testimony. We find no sinister motive and no intent to exclude any group or class on irrelevant, irrational, or prohibited grounds. Although he selected senior noncommissioned officers for the panel, we find that he did not categorically exclude the lower grades from consideration.

The dissenting opinion strays far afield from Article 25, UCMJ. Instead of testing the convening authority's selection against the composite criteria of age, education, training, length of service and judicial temperament, it finds as its major premise "that the convening authority applied a virtually irrebuttable presumption that enlisted personnel below the grade of those he selected ... lack the ability to make findings and adjudge sentences in accordance with the instructions of the military judge." To give credence to such a presumption, one would first have to disbelieve the convening authority's testimony to the contrary. I am not willing to do that as I am convinced beyond a reasonable doubt that the convening authority testified forthrightly and truthfully.[3]

Quoting from Judge Cox's concurring opinion in *United States v. McClain*, 22 M.J. 124, 133 (C.M.A.1986), in this case I too "am convinced beyond any reasonable doubt that the convening authority was sensitive to his statutory duties to appoint members who 'in his opinion ... [were] best qualified ...' in accordance with Article 25(d)(2)."

We have considered the other errors raised and find them without merit.

Accordingly, the approved findings of guilty and the sentence are affirmed.

Chief Judge DeFORD, Senior Judge MYERS, Senior Judge FOREMAN, Judge JOHNSON, Judge KANE, Judge WERNER, Judge GRAY, and Judge NEURAUTER concur.[4]

VARO, Judge, concurring:

I concur with the majority opinion but not with its assessment and discussion of the meaning and implications of the dissenting opinion.

GILLEY, Judge, dissenting:

The appellant contends that the military judge committed jurisdictional error by refusing to order that the convening authority appoint new enlisted personnel because those he chose were selected based on their enlisted grade. In our opinion, the convening authority impermissibly selected enlisted members for this court based on grade.

The appellant requested trial by a panel that included enlisted members. The commanding general had selected an enlisted panel that consisted of the two most senior of nine enlisted grades. He selected from the highest enlisted grade three command sergeants major and one sergeant major and from the next lower enlisted grade two master sergeants. No nominees were selected from the grades of sergeant first class or staff sergeant, the respective third and fourth most senior of the enlisted grades, or from any lower grade. The appellant challenged the selection of this panel, but his motion for a new panel was denied. Then appellant requested trial by military judge alone, which did not waive the panel selection issue. *See United States v. McClain*, 22 M.J. 124, 128 (C.M.A. 1986).

The commanding general testified that he did not make grade a criterion in addi-

---

3. In my personal opinion, the *sub silentio* premise of the dissenting opinion is a chimerical assumption that "higher the grade-tougher the court." Based on almost forty years of experience, I categorically reject such a view.

4. Judge Giuntini retired from the service prior to the court's final action in this case.

tion to the six specified criteria in Uniform Code of Military Justice, Article 25(d)(2), 10 U.S.C. § 825(d)(2) (1982). That Article provides six criteria for determining the "best qualified", namely, "age, education, training, experience, length of service, and judicial temperament." *Id.* The convening authority testified further that he did not select more junior personnel because of his concern that they would not act independently of senior personnel.

The military judge ruled as follows:

It appears to me that the Convening Authority is applying Article 25 [UCMJ] as he views it, selecting members by reason of their age, education, training, experience, length of service, and judicial temperament. While I may have more confidence in the ability of the junior enlisted NCO Corps to.following [sic] instructions and to act with independence and integrity than the Convening Authority does, this nevertheless does not rise to a finding of any improper motives involved in the Convening Authority's action, accordingly, your motion is denied.

From our reading, the military judge found that the convening authority, in general, lacked confidence in non-senior enlisted personnel to meet the criteria of Article 25. We agree and further find that the convening authority applied a virtually irrebuttable presumption that enlisted personnel below the grade of those he selected, that is, the second most senior enlisted grade, lack the ability to make findings and adjudge sentences in accordance with the instructions of the military judge.

The record does not contain evidence that the convening authority actually intended to stack the court for a heavy sentence, but he did make grade the essential criterion for selection. Thereby, he also created the appearance of an improper purpose in his selection of enlisted court members. In *McClain*, Chief Judge Everett, relying on *United States v. Crawford*, 35 C.M.R. 3, 12

(C.M.A.1964), made clear that such a basis for selecting court members was not correct. *McClain*, 22 M.J. at 130. Indeed, that criterion was disapproved in *Crawford*, 35 C.M.R. at 12, when the Court of Military Appeals took judicial notice that "many enlisted persons below the senior noncommissioned ranks are literate, mature in years, and sufficiently judicious in temperament to be eligible to serve on courts-martial," even though substantial preliminary screening would be necessary to identify those soldiers. The court found a standard that enlisted members could not be excluded for an "irrelevant, irrational, or prohibited" grounds. *Id.*

Contrary to that standard, this convening authority did not apply Article 25 because he in fact used grade as a criterion; to him, only soldiers of the most senior enlisted grades could be judicious in temperament and mature enough in years to meet the criteria of Article 25 for selection as court members.[1] We observe what is perfectly plain: today the noncommissioned officer corps, in particular, and enlisted grades, in general, have many personnel with a significant number of years of service who have the capacities specified by Article 25, UCMJ, readily able to act with independence and integrity. Accordingly, to employ a virtually irrebuttable presumption to the contrary was not well-founded. This convening authority picked an extraordinarily senior enlisted panel, ostensibly because more junior enlisted personnel, including noncommissioned officers of the third and fourth most senior enlisted grades, could not be relied on to act with judicial independence.

Moreover, in *United States v. Greene*, 43 C.M.R. 72, 78 (C.M.A.1970), cited with approval in *McClain*, 22 M.J. at 129, the Court held that the convening authority improperly selected a court panel consisting of three colonels and six lieutenant colonels. That gave the appearance of a court's being "handpicked" by the govern-

---

1. We do not bottom our conclusion on the statistics involved here, but they do tend to corroborate the convening authority's testimony, the military judge's essential finding, and our find-

ing that the convening authority used an improper criterion, grade to select enlisted court members.

ment. *Greene,* 43 C.M.R. at 77. The enlisted members selected for this court panel are relatively more senior than the officer panel in *Greene.* While the analogy is not symmetrical, it fits. Creating that appearance, as the court found in *Greene,* is impermissible.

In the Uniform Code of Military Justice, Congress departed from earlier codes of military justice by not making grade a criterion for selection of court members. *See generally, McClain,* 22 M.J. at 129. The court in *United States v. Daigle,* 1 M.J. 139, 141 (C.M.A.1975), interpreted this standard as follows: "[w]hen rank is used as a device for deliberate and systematic exclusion of qualified persons, it becomes an irrelevant and impermissible basis for selection." In fact, all case precedent recognizes that by deleting grade as a criterion, Congress plainly did not want it to be a criterion.

In *Crawford,* Chief Judge Quinn noted that Article 25(d)(1) provides further evidence that Congress never intended that the criteria in Article 25 be used to exclude entire grades of officer or enlisted personnel. Article 25(d)(1) provides: "[w]hen it can be avoided, no member of an armed force may be tried by a court-martial any member of which is junior to him in rank or grade." That provision indicates that Congress desired that each eligible member considered have the criteria applied individually, regardless of grade. Otherwise, Congress logically would have provided that only the two or three most senior enlisted grades may sit. Certainly, the convening authority could conclude that an individual sergeant first class, staff sergeant, or any more junior enlisted member may be intimidated by senior personnel. But to apply a virtually irrebuttable presumption that sergeants first class or any grade lower may not sit because they as a group could not be relied upon to exercise judicial temperament flies in the face of what the court judicially noted in *Crawford* and articulated in *Daigle.* This does not mean the convening authority must, or necessarily should, select a certain number, or

any members, from each grade. Rather, he simply must not use grade, or any extraneous standard applied to entire grades, to exclude them from consideration for selection.

In *Daigle,* the Court found that the convening authority made improper selection by grade rather than by weighing the qualities of the nominees. 1 M.J. at 140–41. That same infirmity resulted here through trying to grade a fear that nominees would be intimidated by senior personnel. That exclusion subverted the appellant's right to enlisted members from a field of those who, regardless of grade, met the criteria of Article 25, thereby violating that provision to the prejudice of the appellant.

The government cites *United States v. Smith,* 27 M.J. 242 (C.M.A.1988), in which the Court upheld a motivation to obtain a more representative cross-section of panel members. But that motive and result present an inverse of this case because here entire grades of personnel were excluded, resulting in a less representative cross-section.

We distinguish the result in *Crawford,* 35 C.M.R. at 12, because in that case the convening authority did not employ a test that virtually only the most senior enlisted personnel could act with independence and integrity. In contrast, the strength of the stated presumption employed here was shown specifically by selection of the six enlisted personnel from only the two most senior grades. Moreover, three of those were command sergeants major, who by their positions of command authority, are further distinguished from other sergeants major within that most senior enlisted grade. Earlier cases have not presented this fact pattern—a convening authority so plainly, as a matter of law, relying upon grade, even though for a stated motive non-sinister in itself—and we are confident that it will rarely, if ever, be repeated.

The majority applies two erroneous standards to this case, as did the military judge. First, the majority holds that the discretion of the convening authority is absolute unless it is proved that he intended to stack the court. Instead, the correct standard is

that grade is not a permissible criterion, even if the motive asserted to use it is to assure independence and integrity in court. Indeed, to make grade a criterion is not to apply the discretion required by Article 25. The Court of Military Appeals has judicially noted that qualified enlisted members are to be found in other than the most senior grades. The majority infers from Chief Judge Quinn's opinion in *Crawford* that the selection process for enlisted members should begin with the highest grade and only if enough sergeants major are not selected should the convening authority proceed to master sergeants, and so on down the ranks. If that were the correct approach, courts-martial consisting of officer members would always consist of at least two-thirds colonels and one-third lieutenant colonels. That obviously is not correct, and the Court of Military Appeals so held in *Greene*, 43 C.M.R. at 78.

Second, the majority also finds that so long as the convening authority espouses that he uses grade simply to assure that members will be able to follow the military judge's instructions and not to achieve harsher results, the appellate courts must accept his selection standard. That is, regardless of the appearance created, the convening authority can select by grade. The majority describes our premise in this regard as "chimerical." To the contrary, the Court of Military Appeals has recognized that courts-martial consisting of only the most senior eligible personnel do create an impermissible appearance that the court was stacked for the purpose of obtaining findings or a sentence favorable to the government. What the Court held in *Greene* was that Congress wrote Article 25 to preclude such an appearance: we will not have courts-martial that are so rank-heavy that one could question their independence.

Obviously, Congress and the Court of Military Appeals do not accept the premise of the convening authority, that the more senior in grade the service member, the more independent they are. It may be, as the author for the majority states, more senior courts are not really "tougher." But that is not relevant. The Court of Military Appeals consistently has read the

Uniform Code of Military Justice—the *magna carta* of military due process—to categorically preclude having grade in fact or appearance as a criterion for courts-martial membership. Congress really treated selection-by-grade the opposite of the way this convening authority and implicitly the majority here do: when a convening authority "handpicks" only very senior members, it looks like he wants to tip the scales of justice to achieve a conviction or more severe punishment. Hence, Congress precluded that danger; the delicate balance struck in Article 25 is to achieve a quality court free of selection-by-grade. That is, convening authorities must be satisfied that the predictability they seek in courts-martial is to be found in the quality of the individual court members selected, regardless of his or her grade. In sum, military due process does not allow selection of only senior enlisted or officer members because of their grade. Stated differently, entire grades may not be excluded—certainly not those with experienced soldiers who are usually noncommissioned officers.

We have written so fully on this issue because of its importance. Military justice is too mature to have to rely upon a selection process by which only the most senior of enlisted or officer members sit on courts-martial because only they can be trusted to act with independence and integrity. That denigration of fine, experienced soldiers is intolerable. This convening authority did not apply Article 25 in fact, and he created an impermissible appearance that in itself denied military due process as long-recognized by the Court of Military Appeals.

For the foregoing reasons, in our opinion the approved findings of guilty and the sentence should be set aside. An other trial in accordance with Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 810, should be ordered by the same or a different convening authority.

Judge Smith concurs.