STUCKY, Judge,
with whom RYAN, Judge, joins (dissenting in part and concurring in the result):
I concur in affirming the judgment of the United States Ah- Force Court of Criminal Appeals but dissent from the majority’s conclusion that the court member selection process employed in this case — excluding from consideration any officer assigned to Appellant’s unit before he was relieved of command or deployed — was inconsistent with Article 25, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 825 (2006). I disagree with the majority’s interpretation of the facts and its conclusions concerning the law governing this issue.
I.
Appellant was the commander, 82d Mission Support Group, a subordinate unit of the 82d Training Wing (82 TRW). The commander, 82 TRW was the special court-martial convening authority. Both organizations are located at Sheppard Air Force Base, Texas, as is the 80th Flying Training Wing (80 FTW). The commander, Second Air Force (2 AF), located at Keesler Air Force Base, Mississippi, was the general court-martial convening authority for all of these units.
The 82 TRW’s staff judge advocate’s military justice staff (82 TRW/JAM) had a policy of not nominating for selection as court members persons from the same unit as the accused because of the likelihood they would be “conflicted.” Because of his grade and position, the number of officers in the wing who were neither junior in rank nor subordinate to Appellant was not sufficient to provide the number of nominees for general court-martial duty (twelve to fourteen) that the 2 AF commander required. After consultation, 2 AF/JAM advised 82 TRW/JAM not to nominate any officer who was assigned to the 82 TRW before Appellant “either was relieved of command or deployed.” The convening authority referred the case to trial on December 19, 2007, before a court consisting of four officers from the 82 TRW and five officers from other units at Sheppard Air Force Base. The ease was eventually brought to trial under a different court-martial order, which included five officers assigned to Sheppard AFB, three of whom were assigned to the 82 TRW, and six officers within 2 AF that were assigned to other installations.
II.
“Any commissioned officer on active duty is eligible to serve” on courts-martial. Article 25(a), UCMJ (emphasis added). “When it can be avoided,” no court member should be junior to the accused in rank or grade. Article 25(d)(1), UCMJ.
When convening a court-martial, the convening authority shall detail as members thereof such members of the armed forces as, in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament. No member of an armed force is eligible to serve as a member of a general or special court-martial when he is the accuser or a witness for the prosecution or has acted as investigating officer or as counsel in the same case.
Article 25(d)(2), UCMJ (emphasis added).
Except for the President, a “convening authority’s power to appoint a court-martial is one accompanying the position of command and may not be delegated.” United States v. Ryan, 5 M.J. 97, 100-01 (C.M.A.1978); accord United States v. Dowty, 60 M.J. 163, 169 (C.A.A.F.2004); see Article 140, UCMJ, 10 U.S.C. § 940 (2006) (permitting President to delegate, and provide for subdelegation, any authority vested in him by the UCMJ). Article 25(d)(2) gives the convening authority almost unfettered discretion in selecting court members, as long as he determines they are “qualified” and not otherwise ineligible. Of course, the criteria used to select the members must not violate the Constitution or the Uniform Code of Military Justice. United States v. Witham, 47 M.J. 297, 301 (C.A.A.F.1997).
This Court has recognized that the convening authority “ ‘must necessarily rely on his *364 staff or subordinate commanders for the compilation of some eligible names.’ ” Dowty, 60 M.J. at 170 (quoting United States v. Kemp, 22 C.M.A. 152, 155, 46 C.M.R. 152, 155 (1973)). Problems in the court member selection process normally arise not from the actions of the convening authority in detailing the members, but from those of the staff tasked with assembling the list of nominees.
III.
The majority opinion correctly notes that our Article 25 jurisprudence is informed by three principles concerning the screening of personnel for court-martial duty:
(1) “we will not tolerate an improper motive to pack the member pool,” (2) “systemic exclusion of otherwise qualified potential members based on an impermissible variable such as rank[, race, or gender] is improper,” and (3) “this Court will be deferential to good faith attempts to be inclusive and to require representativeness so that court-martial service is open to all segments of the military community.”
United States v. Gooch, 69 M.J. at 358 (C.A.A.F.2011) (alteration in original) (quoting Dowty, 60 M.J. at 171) (citations omitted).
The opinion acknowledges that the selection criteria listed in Article 25 are not “an exclusive list of criteria by which potential members are screened.” Id. at 359. It recognizes that, “although not enumerated as an express criterion in Article 25, UCMJ, availability in the military context is an appropriate screening factor.” Id. at 358; see id. at 358 (citing United States v. Wiesen, 56 M.J. 172, 176 (C.A.A.F.2001)). Similarly, the majority concludes that “[i]t is intuitive that other relationships might similarly disqualify an otherwise eligible officer during the screening process, such as the parent of a victim.” Id. at 357-58. What about the military spouse of the staff judge advocate, prosecutor, defense counsel, or the accused; others awaiting trial by court-martial; military witnesses for the defense; and military personnel who work directly with the accused or the victim on a daily basis? It is similarly “intuitive” that each of these relationships might be disqualifying.
The majority incorrectly concludes that, by excluding officers assigned to the same wing as Appellant before he deployed, “[a] majority of eligible members from Appellant’s base were thereby excluded from consideration.” Id. at 360. The court-martial was convened by the commander, 2 AF, who commands major units at five installations from which he could draw court members. Although it is normal practice to obtain court members from the locus of the trial, it is not at all unusual in senior officer cases for convening authorities to detail court members from different installations. A majority of eligible members within 2 AF were not excluded from consideration.
The majority also contends that “by delimiting the pool of potential members in this way the Government arguably although not purposefully afforded itself the opportunity in effect to peremptorily challenge any officer at 82 TRW who might know Appellant and have a favorable view of Appellant’s professional service.” Id. at 360. There is absolutely no evidence that the Government had any such motive or that the members excluded were more likely to be favorable than unfavorable to Appellant. In light of the number of officers requested by the 2 AF commander (twelve to fourteen) and the number of eligible officers within the command, the pool was not significantly limited.
In today’s high-tempo military, finding officers who will be available some time in the future is often a difficult task. Convening authorities recognize the importance of courts-martial but at the same time want to minimize the disruption the trial will cause to subordinates who are performing their primary military missions. Finding nominees becomes even more difficult when, as here, the accused is a high-ranking officer because the pool of eligible court members not junior in grade is smaller and their military duties and responsibilities tend to be significantly greater.
Convening authorities are also very busy people. If, because of challenges, a court- *365 martial panel falls below quorum after voir dire, the trial must be continued while the convening authority’s staff looks for eligible members who are present and whose primary duties are such that they are available to sit on the court-martial. The convening authority must then interrupt his other duties to consider the nominations and select additional members. If, as the majority demands, the convening authority’s staff is prohibited from rejecting persons who could not or most likely would not survive the voir dire and challenge process, convening authorities will have to refer cases to larger court panels — taking more members away from their primary duty — or face the prospect of more interruptions, in both the trial and his schedule, to select additional court members.
The goal of Article 25 is to ensure that a military accused is tried before fair and impartial members who understand the need for both justice and military discipline; hence the requirement that the convening authority detail for court-martial duty those military members who, “in his opinion, are best qualified for the duty by reason of age, education, training, experience, length of service, and judicial temperament.” Article 25(d)(2). Although convening authorities have considerable discretion in selecting court members, they expect their staffs to nominate officers according to the law and in a manner that will be least disruptive to performing the primary military mission.
As the Mission Support Group commander, responsible for more than 900 personnel supporting the Air Force’s largest technical training wing, and chief advisor to two wings on all civilian and military promotions, hiring, and professional development, Appellant was a vital member of the 82 TRW commander’s staff and would necessarily have interacted on a daily basis with all of the senior officers within the wing. Additionally, all of the alleged victims were members of the 82 TRW, in particular, the squadron he commanded. While voir dire may be the principal legal instrument used to ensure that the members of a court-martial are free from conflict, Gooch, 69 M.J. at 357-58, it is not the only means to ensure that the court panel to which an accused’s ease is referred is fair and impartial. The convening authority was free to select any eligible officer within his command who met Article 25 criteria. The fact that persons who were assigned to the same unit as Appellant and the alleged victims, and who were, therefore, most likely to have had extensive dealings with them, were not considered to sit on his court-martial does not violate either the text nor the spirit of Article 25, our previous jurisprudence, or the holding in United States v. Bartlett, 66 M.J. 426 (C.A.A.F.2008).
Acknowledging that Article 25 criteria are not the only criteria that may be considered, but unwilling to permit the use of criteria not otherwise prohibited by the Constitution, UCMJ, R.C.M., or case law, the majority adopts an ad hoc approach to conclude that the selection criteria employed here were not appropriate. It provides no guidance for convening authorities or their staffs in evaluating selection criteria for future eases.