**UNITED STATES, Appellee,**

v.

**Jefferson N. MARSH, Private First Class, U.S. Army, Appellant.**

No. 46,912.
CM 441079.

U.S. Court of Military Appeals.

March 31, 1986.

For Appellant: *Captain Rita R. Carroll* (argued); *Colonel R. Rex Brookshire, II* and *Major Paul J. Luedtke* (on brief); *Colonel William G. Eckhardt.*

For Appellee: *Captain Dean C. Berry* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Major Joseph A. Rehyansky* and *Captain James C. Underhill, Jr.* (on brief).

---

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried by a general court-martial with officer members sitting at Nellingen Barracks, Federal Republic of Germany. Contrary to his pleas, he was found guilty of aggravated assault, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. He was sentenced to confinement for 1 year, total forfeitures for that period, and reduction to the lowest enlisted grade. The convening authority approved this sentence, and the Court of Military Review affirmed in an unpublished opinion.

This Court granted review of these two issues:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY FAILING TO DISMISS THE CHARGE AND SPECIFICATION FOR LACK OF JURISDICTION.

II

WHETHER THE MILITARY JUDGE ERRONEOUSLY DENIED A DEFENSE MOTION TO STRIKE THE DIRECT TESTIMONY OF TWO GOVERNMENT WITNESSES FOLLOWING THE GOVERNMENT'S FAILURE TO PRODUCE A VERBATIM COPY OR TAPE OF THEIR PRIOR SWORN TESTIMONY AS REQUIRED UNDER THE JENCKS ACT.

We have considered these questions and conclude that relief is not warranted.

The Court of Military Review briefly summarized the facts pertinent to each of the above issues:

The appellant asserts that the members detailed to his court-martial were improperly selected and therefore that his court-martial lacked personal jurisdiction over him. The charges were initially referred to trial by the general court-martial convened by Court-Martial Convening Order Number 367, dated 8 December 1980. According to a stipulation of fact, the trial counsel learned that because several of the members detailed by that order had been excused by the convening authority, additional members needed to be detailed. She was then instructed by the chief of the criminal law division in the office of the staff judge advocate to determine which members from another panel previously selected by the convening authority would be available. She was told to do this by starting with First Lieutenant Mitchell, a female officer, and then by order of seniority down the list to "find the first five members who were available on the scheduled trial date." After the trial counsel did so, the staff judge advocate recommended to the convening authority

that the five members be detailed to the appellant's trial. He also advised the convening authority that he was not limited to those named but "could select members from throughout the command." The convening authority agreed and detailed the five persons recommended. This action was appropriately reflected in an amending order.

\* \* \* \* \* \*

The appellant next asserts that the military judge erred by refusing to strike the testimony of the victim and a military police investigator pursuant to the Jencks Act, 18 U.S.C. § 3500. Both of these witnesses testified at the Article 32 [UCMJ, 10 U.S.C. § 832] investigation. The legal clerk who recorded those proceedings was asked by the appellant's counsel to preserve the tape recordings. The clerk replied that he would. Upon changing jobs, the clerk gave the tapes to Specialist Stange, the noncommissioned officer in charge of the branch legal office involved. That individual testified that he placed the tapes in his desk, but did not take any special steps to protect them, and could not recall if they were specially marked. Shortly before trial, the defense counsel asked to review the tapes. At that time, it was discovered that they had disappeared. As the government could not produce the tapes, the defense, upon completion of the direct examination of both witnesses, moved that the testimony of the witnesses be stricken pursuant to 18 U.S.C. § 3500(d). The military judge denied the motion.

Unpublished opinion at 1–2, 2–3.

## I

Appellant's basic contention is that purported defects in the process of detailing replacement members for his court-martial deprived this military tribunal of its jurisdiction to try him for these offenses. *See United States v. Ryan*, 5 M.J. 97, 101 (C.M.A.1978); *see also* Art. 29(b), UCMJ, 10 U.S.C. § 829(b). His criticisms of the procedures used in composing this court-martial are numerous; and we shall address each separately, although we shall also consider their collective effect, if any, on the appearance of fairness in the military justice system. *See generally United States v. Greene*, 20 U.S.C.M.A. 232, 237–38, 43 C.M.R. 72, 77–78 (1970); *United States v. Hedges*, 11 U.S.C.M.A. 642, 645, 29 C.M.R. 458, 461 (1960) (Latimer, J., concurring).

## A

The first attack on the composition of appellant's court-martial is based on the prosecution's role in securing replacement members. *See generally United States v. Crumb*, 10 M.J. 520, 527–28 (A.C.M.R.1980) (Jones, S.J., concurring); *United States v. Cook*, 18 C.M.R. 715 (A.B.R.1955). The record indicates that trial counsel was informed shortly before trial that certain members of the court-martial panel—Panel R—to which Marsh's case had been referred were excused or unavailable. She brought this matter to the attention of the "chief of the criminal law division," who worked for the staff judge advocate of the convening authority. He instructed her to contact several members of a second panel—Panel P—to see if they were available to sit as members in appellant's case. She accomplished this task and reported the results to the assistant staff judge advocate. The records indicate no further involvement on her part in the replacement process.

■ We believe it is well-established in military law that the trial counsel, being a partisan advocate, can play no part in the selection of court members. *United States v. Cherry*, 14 M.J. 251 (C.M.A.1982); *United States v. Aho*, 8 M.J. 236 (C.M.A.1980). However, we recognize that this officer has certain ministerial responsibilities, such as notifying members of the scheduled trial date and reporting matters concerning their availability to the convening authority.[1] Paras. 4*c* and 44*f*(2), Manual for

---

1. Neither at the time of this trial, *see* Art. 25(d)(2), Uniform Code of Military Justice, 10

Courts-Martial, United States, 1969 (Revised edition); *see also* DA Pamphlet 27–5, *Staff Judge Advocate Handbook* 112 (1963).[2] In this light, we conclude that trial counsel here played no meaningful role in the selection of the replacement members.

■ Appellate defense counsel then asserts that the chief of the criminal law division should not have participated in the replacement process because he also had prosecutorial responsibilities and, in some respects, might be deemed the chief prosecutor in the office of the staff judge advocate.

Although this officer did not purport to act as trial counsel or assistant trial counsel, *cf. United States v. Beard,* 15 M.J. 768, 773 (A.F.C.M.R.1983), we recognize that substance, rather than form, should be determinative. However, in this regard, appellant is at a disadvantage. He made no contention at trial that the chief of the criminal law division had tainted the process of selecting or replacing court members, so the record is devoid of evidence as to the specific responsibilities of this officer. Moreover, appellate defense counsel has provided us no information in this regard.

The Government referred to this officer as the "chief of military justice," a position in the staff judge advocate's office which is adverted to in the Army's *Staff Judge Advocate Handbook, supra.* Our perusal of this document does not indicate that the chief of military justice is intended to be a chief prosecutor or to perform prosecutorial duties. *Id.* at 23–24, 26–27. Moreover, we note that although in *Greene* this Court invalidated a selection of court members in which a major role was played by the chief of military justice in the office of an Air

Force staff judge advocate, there was no intimation that this officer was disqualified *per se* by the duties of his position to participate in recommending court members.

If the defense argument were accepted here, it would be hard to escape applying the same rationale to the staff judge advocate, to whose office and supervision the trial counsel is assigned in the Army.[3] Indeed, from time to time there has been comment about the possible prosecutorial orientation of the staff judge advocate and the convening authority. *See, e.g., United States v. Brown,* 13 M.J. 253, 260 (C.M.A. 1982) (Fletcher, J., concurring in the result); *United States v. Hardin,* 7 M.J. 399 (C.M.A.1979); Douglass, *Changing Roles from Judge to Prosecutor,* 5th Annual Homer Ferguson Conference on Appellate Advocacy (1980). Nonetheless, the Code has entrusted selection of court members to the convening authority, and military precedent has allowed the staff judge advocate to make recommendations for selection. In the absence of a particular showing of partisan advocacy, we cannot see why the staff judge advocate or a member of his staff, whatever his title, should be *per se* excluded from making these recommendations.

### B

■ The second major challenge to the composition of appellant's court-martial was that, although Lieutenant General Becton, the convening authority, had personally selected the replacement members, he had not been "wholly unfettered" in his choice. *See United States v. Greene, supra* at 237, 43 C.M.R. at 77. Appellant notes that General Becton was not confronted with the decision on replacement

U.S.C. § 825(d)(2), nor subsequently *see* Art. 25(e), has a trial counsel possessed authority to excuse a prospective or detailed court member on the ground of unavailability. No evidence was presented that trial counsel in this case exercised such authority with respect to the members of Panel R or Panel P.

2. While the *Handbook* was rescinded in 1979 and not replaced prior to this trial, we believe

that the description of the functions of the officers referred to in this opinion is still applicable here.

3. In the Navy, on the other hand, the prosecutor is obtained from a Legal Service Office and is not supervised by the staff judge advocate who advises the convening authority.

until the day of trial; and at that time he was informed that those members recommended by the staff judge advocate as replacements had already been contacted and were available. However, unlike the situation presented in *United States v. Greene, supra,* these officers had previously been selected by the convening authority to serve as members on Panel P—another general court-martial panel in the command. This fact suggests that General Becton had sufficient time to assess their qualifications in terms of the criteria specified in Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2). Moreover, the staff judge advocate also provided him with the names of officers comprising Panel Q—a third panel which had been previously selected as qualified for general court-martial duty. Finally, the staff judge advocate expressly advised the convening authority that he was not limited to any of those persons listed and he could detail any officer or warrant officer in his command.

We recognize that the work of subordinates can be done in such a way that a superior has no practical alternative but to follow their recommendation. This goes far beyond efficient staff work by subordinates to anticipate the wishes of the superior. If it appeared to us that the actions of the chief of the criminal law division had presented General Becton with a *fait accompli* so that he had no real choice but to appoint as replacements the persons who had been recommended by his subordinates, we would not hesitate to say that he was not "wholly unfettered" in his selection and that Article 25 of the Code had been violated. *United States v. Greene, supra.* However, the record simply does not support such a conclusion.

### C

■ Appellant's third challenge to the composition of his court-martial was based on the criteria considered in selecting the replacement members. *See United States v. Daigle,* 1 M.J. 139 (C.M.A.1975). The staff judge advocate had recommended that, in replacing the members excused

from Panel R, General Becton should appoint a female lieutenant from Panel P and thereafter should make replacements by beginning with the senior member of that panel who was available and working down the list according to rank. Consequently, Marsh asserts that, with the single exception of the female, seniority was the sole criterion upon which the convening authority based his selection of replacements. From this premise, he reasons that officers of lower rank were systematically excluded in violation of Article 25(d)(2). *See United States v. Yager,* 7 M.J. 171, 172 (C.M.A. 1979). We disagree.

It is well-established that a convening authority may rely on his staff to nominate court members to be considered by him for ultimate appointment to a particular court. *United States v. Kemp,* 22 U.S.C.M.A. 152, 46 C.M.R. 152 (1973). Otherwise, in a large and busy command his task would be overwhelming. In appellant's case, the chief of the criminal law division and the staff judge advocate performed this "preliminary screening" function. The record provides no direct evidence of the instructions they received from the convening authority in this regard. *Cf. id.,* 46 C.M.R. at 155. However, it does show that, prior to Marsh's court-martial, the convening authority had selected three general court-martial panels (P,Q,R) to hear cases within this command. Each panel had 10 members with a colonel as president, a lieutenant colonel as the next ranking officer, either two majors and three captains or three majors and two captains, two lieutenants—of whom at least one was a female—and a warrant officer. Thus, as pointed out in the Government's brief, the panels were similarly composed; and the standard composition was well balanced between senior and junior officers. The reduction in Panel R because of the excusal or unavailability of the president and five other members destroyed this composition, chosen by General Becton; and the method used for replacement substantially restored it. This is persuasive circumstantial evidence, uncontroverted by the defense, that neither the convening authority nor his

subordinates impermissibly used rank to exclude otherwise eligible members from this court-martial.

## D

On appeal, appellant has expanded his argument that impermissible criteria were utilized by the convening authority in detailing these replacement members. He notes that two female lieutenants who were members of Panel R had been excused and that the staff judge advocate specifically recommended that a female lieutenant on Panel P be appointed as a replacement because a female was a victim of the assault with which Marsh was charged. According to appellate defense counsel, the acceptance of this recommendation by General Becton—presumably for the reason suggested by the staff judge advocate—violated the principle that gender is not a constitutionally permissible basis for inclusion on a panel (*see United States v. Crawford*, 15 U.S.C.M.A. 31, 49, 35 C.M.R. 3, 21 (Ferguson, J., dissenting) (1964)). Moreover, he complains that the sex of a court member is not one of the six permissible considerations authorized in Article 25(d)(2) and that in the present case this selection was made for the purpose of stacking the panel against appellant, who is a male. *See generally United States v. Hedges, supra.*

Although trial counsel expressly acknowledged in the presence of Marsh and his counsel that the staff judge advocate had advised the convening authority to detail the female member because there was a female victim in this case, defense counsel made no objection to her appointment to the panel on this basis. He did not assert that her inclusion on the panel was constitutionally suspect (*cf. Brooks v. Beto*, 366 F.2d 1 (5th Cir.1966), *cert. denied*, 386 U.S. 975, 87 S.Ct. 1169, 18 L.Ed.2d 135 (1967)), or that it violated Article 25(d)(2) (*cf. United States v. Smith*, 18 M.J. 704 (A.C.M.R. 1984)). Moreover, he did not call the staff judge advocate as a witness in order to provide a more complete record concerning the recommendation and its acceptance.

 Because two female members had been excused from Panel R, the panel to which the case had originally been referred for trial, the appointment of one female as a replacement can hardly be considered "packing" the court in the sense of *United States v. Hedges, supra*. Moreover, this woman had previously been detailed as a court member on another panel, a fact suggesting that the convening authority had already determined her qualifications as a court member in accordance with Article 25(d)(2). Finally, appellant's counsel neither questioned her on *voir dire* concerning possible sexual bias against appellant or in favor of the victim; nor did he challenge her for cause on this basis; or even exercise his peremptory challenge in this case. Accordingly, this objection to the court-selection process must be considered waived.[4] *United States v. Wilson*, 21 M.J. 193, 197 (C.M.A.1986).

## E

 The individual attacks on the detailing process in the present case are deemed without merit. Viewed together, we conclude that they do no more than suggest that an attempt was made to preserve the nature of the original panel. This is not court-packing, and it does not create an impression which undermines the fairness and integrity of the military-justice system.

## II

The second granted issue in this case challenges the military judge's refusal to strike the trial testimony of the victim and a military police investigator. Appellant asserts that the military judge's ruling violated the Jencks Act, 18 U.S.C. § 3500. He argues that the Government was required by this statute to produce upon defense request the tapes of these witnesses' previ-

---

**4.** If appellant was unhappy with the extent to which the convening authority had employed seniority in selecting the replacements, he could have improved the situation by peremptorily challenging one of the more senior members. However, he failed to do so.

ous testimony at an Article 32 UCMJ, 10 U.S.C. § 832 investigation. 18 U.S.C. §§ 3500(b) and (e). He further contends that this statute required the military judge to strike the witnesses' trial testimony when the Government failed to produce these tapes. 18 U.S.C. § 3500(d).

■ It is now well-established that the Jencks Act applies to trials by court-martial. *United States v. Jarrie,* 5 M.J. 193 (C.M.A.1978); *United States v. Albo,* 22 U.S.C.M.A. 30, 46 C.M.R. 30 (1972); *see United States v. Augenblick,* 393 U.S. 348, 355–56, 89 S.Ct. 528, 533–34, 21 L.Ed.2d 537 (1969); *United States v. Bryant,* 439 F.2d 642, 651 (D.C.Cir.1971). Moreover, the act itself clearly includes statements recorded by means of tape. 18 U.S.C. § 3500(e)(2). *See Palermo v. United States,* 360 U.S. 343, 351–52, 79 S.Ct. 1217, 1224–25, 3 L.Ed.2d 1287 (1959); *United States v. Merlino,* 595 F.2d 1016 (5th Cir. 1979). However, a question not yet decided by this Court is whether the act covers statements made by government witnesses at an Article 32 investigation in the presence of an accused and his counsel. *Cf. United States v. Munroe,* 421 F.2d 644 (5th Cir.), *cert. denied,* 400 U.S. 851, 91 S.Ct. 79, 27 L.Ed.2d 89 (1970); *United States v. Baker,* 358 F.2d 18 (7th Cir.), *cert. denied,* 385 U.S. 869, 87 S.Ct. 135, 17 L.Ed.2d 96 (1966).

The Courts of Military Review, including the court that reviewed appellant's case, have uniformly held that the Jencks Act applies to tapes of statements made by government witnesses at such a hearing. *See United States v. McDaniel,* 17 M.J. 553 (A.C.M.R.1983); *United States v. Thomas,* 7 M.J. 655 (A.C.M.R.1979), *aff'd on other grounds,* 11 M.J. 135 (C.M.A. 1981); *United States v. Patterson,* 10 M.J. 599 (A.F.C.M.R.1980); *United States v. Scott,* 6 M.J. 547 (A.F.C.M.R.1978); *United States v. Combs,* 28 C.M.R. 866 (A.F.B.R. 1959); *United States v. Strand,* 17 M.J. 839 (N.M.C.M.R.1984). This conclusion is justified on the basis of the broad language of the statute in its amended form (*see generally United States v. Calley,* 46

C.M.R. 1131, 1191–93 (A.C.M.R.1973), *aff'd on other grounds,* 22 U.S.C.M.A. 534, 48 C.M.R. 19 (1973) ); its express inclusion in section (e)(3) of statements to a grand jury; and its failure expressly to except statements made in the presence of the accused and his counsel. Such a conclusion is especially appropriate in the present case where it was office policy that these tapes be preserved; the reporter indicated to counsel prior to the hearing that he would retain the tapes, and defense counsel reasonably relied on this assurance. *See Jencks v. United States,* 353 U.S. 657, 668, 77 S.Ct. 1007, 1013, 1 L.Ed.2d 1103 (1957).

■ The final question we must decide is whether the Jencks Act dictates the drastic remedy of striking the testimony of these witnesses because of the Government's failure to produce these materials. 18 U.S.C. § 3500(d). The Supreme Court has indicated on several occasions that good-faith loss of such materials may not require the same sanction required for deliberate suppression or for bad-faith destruction of these materials. *United States v. Augenblick, supra,* 393 U.S. at 355–56, 89 S.Ct. at 533–34; *Killian v. United States,* 368 U.S. 231, 242, 82 S.Ct. 302, 308–09, 7 L.Ed.2d 256 (1961); *Campbell v. United States,* 365 U.S. 85, 98, 81 S.Ct. 421, 428, 5 L.Ed.2d 428 (1961). *See generally United States v. Bryant, supra.* In the present case, no evidence was presented that the Government intentionally withheld these tapes or destroyed them in a bad-faith effort to frustrate the defense or in accordance with routine, but misguided, office procedure. *Cf. United States v. Jarrie, supra* at 195; *United States v. Carrasco,* 537 F.2d 372 (9th Cir.1976); *United States v. Bryant, supra* at 652 n. 21.

The Government introduced substantial evidence that it lost these tapes despite a good-faith effort on its part to preserve these materials. *See generally United States v. Bryant, supra.* It established that it was office policy for these tapes to be preserved for trial. It also introduced testimony from the court reporter and his supervisor as to the particular steps they

took in accordance with this policy. While some negligence may have occurred in the execution of this policy,[5] there was no gross negligence amounting to an election by the prosecution to suppress these materials. *United States v. Jackson*, 450 A.2d 419, 427 (D.C.1982); *Johnson v. United States*, 298 A.2d 516, 520 (D.C.1972). Moreover, appellant was provided a summarized transcript of the witnesses' prior testimony which the court reporter testified without contradiction was "almost word for word."

The defense's cross-examination based on these transcripts was effective; and from our examination of the record we are convinced that the trial defense counsel was not significantly encumbered in his cross-examination of government witnesses because of the unavailability of the tapes of the testimony given at the Article 32 investigation. Accordingly, we conclude that the military judge did not err in refusing to strike the testimony of these government witnesses. *United States v. Bastanipour*, 697 F.2d 170, 174 (7th Cir. 1982), *cert. denied*, 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d 358 (1983); *United States v. Perry*, 471 F.2d 1057, 1068 (D.C.Cir. 1972).

### III

The decision of the United States Army Court of Military Review is affirmed.

Judge COX, concurs.

---

5. On one occasion the trial judge stated that the tapes "evidently" were "stolen." Later he ruled the tapes were "lost."