UNITED STATES

v.

Marion H. TANKSLEY, 248–46–4299,
Captain (O–6), U.S. Navy.

NMCM 96 01402.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 6 March 1996.

Decided 31 March 1999.

LCDR Eric C. Price, JAGC, USN, Appellate Defense Counsel.

LCDR R.C. Klant, JAGC, USN, Appellate Defense Counsel.

CDR D.H. Myers, JAGC, USN, Appellate Government Counsel.

Col Charles Wm. Dorman, USMC, Appellate Government Counsel.

LCDR N.B. Jones, JAGC, USN, Appellate Government Counsel.

LT J.K. O'Grady, JAGC, USN, Appellate Government Counsel.

Maj Clark R. Fleming, USMC, Appellate Government Counsel.

Before SEFTON, Chief Judge, LEO, Senior Judge, and TROIDL, Appellate Military Judge.

SEFTON, Chief Judge:

Appellant was tried on various dates between October 1994 and March 1995 by a general court-martial composed of officer members. Contrary to his pleas, he was convicted of violating a general regulation, five specifications of making false official statements, taking indecent liberties with a female under the age of 16, communicating a threat, and false swearing, in violation of Articles 91, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 891, 907, and 934 (1994). The members imposed a sentence which included confinement for 38 months, forfeiture of $3,500 pay per month for 30 months, and dismissal from the Naval service. The convening authority approved the sentence as adjudged, but as a grant of clemency, suspended the adjudged forfeitures for a period of 12 months on the condition that they be provided by allotment to appellant's wife.

We have examined the record of trial, the errors assigned by appellant,[1] and the Government's response, along with the excellent

1. I. THE PANEL DETAILED TO APPELLANT'S COURT–MARTIAL WAS IMPROPERLY

oral arguments presented by appellate counsel. After careful consideration, we conclude the findings and sentence to be correct in law and fact and find no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ. We discuss some, but not all, of appellant's assignments of error. While we have carefully considered each of the assigned errors, we provide amplifying comments only as delineated below.

### Ineffective Assistance of Counsel Claims

 We start with the presumption that counsel was competent. *United States v.*

SELECTED IN VIOLATION OF UCMJ ARTICLES 25, [sic] AND 37, BECAUSE THE NOMINATION PROCESS WAS TAINTED BY TRIAL COUNSEL'S IMPERMISSIBLE PARTICIPATION.

II. THE EVIDENCE IS FACTUALLY AND LEGALLY INSUFFICIENT TO SUSTAIN A FINDING OF GUILTY TO INDECENT LIBERTIES.

III. APPELLANT WAS MATERIALLY PREJUDICED WHEN THE MEMBERS RETURNED FINDINGS OF GUILTY OF FALSE OFFICIAL STATEMENTS, AFTER CONSIDERING *PER SE* INADMISSIBLE EVIDENCE THAT THE APPELLANT HAD BEEN OFFERED AND REFUSED TO SUBMIT TO A POLYGRAPH EXAMINATION.

IV. THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS A COMPUTER DOCUMENT UNLAWFULLY SEIZED FROM HIS OFFICE COMPUTER, WHERE APPELLANT HAD A REASONABLE EXPECTATION OF PRIVACY.

V. APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHERE THE GOVERNMENT SEIZED A PRIVILEGED DOCUMENT APPELLANT WAS PREPARING FOR HIS ATTORNEY, AND USED THAT DOCUMENT TO INVESTIGATE AND PREFER ADDITIONAL CHARGES AGAINST APPELLANT.

VI. THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS DOCUMENTS UNLAWFULLY SEIZED FROM APPELLANT'S BRIEFCASE.

VII. APPELLANT WAS DEPRIVED OF A FAIR TRIAL DUE TO IMPROPER ACTIONS BY MEMBERS OF THE PROSECUTION, WHICH CONSTITUTED PROSECUTORIAL MISCONDUCT AND UNLAWFUL COMMAND INFLUENCE.

VIII. TRIAL DEFENSE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO DEVELOP A SENTENCING STRATEGY OR PRESENT ANY EVIDENCE OF THE SERIOUS FINANCIAL CONSEQUENCES THAT THIS APPELLANT AND HIS FAMILY WOULD SUFFER IF AWARDED A DISMISSAL.

IX. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL DEFENSE TEAM FAILED TO CONTACT AND PRESENT THE TESTIMONY OF NUMEROUS FLAG OFFICERS WHO WERE WILLING AND ABLE TO TESTIFY AS TO APPELLANT'S CHARACTER FOR TRUTHFULNESS AND APPEAR AS WITNESSES ON SENTENCING. THIS DEFICIENCY WAS PROFOUND IN A PROSECUTION SUBSTANTIALLY BASED UPON APPELLANT'S REPEATED DENIALS OF DATED AND UNSUBSTANTIATED ALLEGATIONS OF MISCONDUCT, PARTICULARLY WHERE THE PROSECUTION'S WITNESSES SUFFERED SIGNIFICANT CREDIBILITY PROBLEMS, WHILE THE CREDIBILITY OF THESE FLAG OFFICERS WOULD BE MANIFEST.

X. THE MILITARY JUDGE ERRED BY INSTRUCTING THE MEMBERS THAT THEY COULD CONSIDER THE TESTIMONY OF J ON THE INTENT ELEMENT OF THE INDECENT LIBERTIES CHARGE WHERE HER TESTIMONY REGARDING ALLEGED FONDLING BY THE APPELLANT DURING BATHING APPROXIMATELY 30 YEARS EARLIER WAS CONTRADICTED BY HER MOTHER, INCONSISTENT WITH HER PRIOR SWORN STATEMENTS, AND WHERE HER COMPETENCE AND CREDIBILITY WERE IN ISSUE, THUS FAILING THE TEST FOR ADMISSIBILITY.

XI. PETITIONER SUFFERED ILLEGAL PRETRIAL PUNISHMENT IN VIOLATION OF ARTICLE 13, WHICH IF GIVEN APPROPRIATE JUDICIAL CREDIT WOULD RESULT IN SUBSTANTIAL CREDIT FOR ILLEGAL PRETRIAL PUNISHMENT.

XII. IN DENYING APPELLANT'S WRIT OF HABEAS CORPUS THIS COURT ABUSED ITS DISCRETION BY RESOLVING NUMEROUS AND SIGNIFICANT FACTUAL MATTERS BASED ONLY UPON REVIEW OF CONTRADICTORY *EX PARTE* AFFIDAVITS.

XIII. THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW TO PROVE THAT APPELLANT MADE A FALSE OFFICIAL STATEMENT TO DIS AND NCIS AGENTS.

XIV. APPELLANT WAS DENIED HIS STATUTORY RIGHT TO RIGHTS ADVISEMENT IN ACCORDANCE WITH ARTICLE 31(b) WHEN INTERVIEWED BY GOVERNMENT AGENTS ACTING FOR THE DIS.

XV. APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO CONFRONT ADVERSE WITNESSES WHERE THE MILITARY JUDGE RESOLVED A CRITICAL AND CONTESTED QUESTION OF FACT BASED UPON ASSISTANT TRIAL COUNSEL'S PROFFER, A PROFFER MADE OVER DEFENSE OBJECTION.

XVI. THE EVIDENCE IS FACTUALLY INSUFFICIENT TO SUSTAIN A FINDING OF GUILTY FOR A FALSE OFFICIAL STATEMENT TO THE PHYSICAL EVALUATION BOARD.

XVII. APPELLANT WAS DEPRIVED OF A FAIR TRIAL AND DUE PROCESS OF LAW DUE TO CUMULATIVE ERRORS.

*Scott,* 24 M.J. 186, 188 (C.M.A.1987). Nothing in the record before us disturbs that presumption. Appellant was ably represented at trial by individual civilian counsel, individual military counsel, and detailed defense counsel who combined to thoroughly litigate a staggering array of timely pretrial motions, and conducted a thorough defense of appellant at all stages of his trial. Following his conviction, appellant discharged his individual civilian counsel, and retained a second individual civilian counsel, who pursued his cause through post-trial sessions that form the basis for some of the issues before us today. In reaching our conclusions on this matter, we must "measure[ ] ... the combined efforts of the defense team as a whole" as we assess appellant's ineffective assistance of counsel claims. *United States v. Boone,* 42 M.J. 308, 313 (1995)(citing *United States v. Walker,* 21 C.M.A. 376, 380, 45 C.M.R. 150, 154, 1972 WL 14145 (1972)).

Appellant's claims fall into two broad categories: failure to present an effective sentencing strategy, including evidence on the financial consequences of dismissal as a punishment, and failure to present the testimony of numerous flag officers on the issue of appellant's character for truthfulness on the merits and as character witnesses during sentencing.

■ As to the first issue, appellant seeks to revise history. He opted during the sentencing portion of the trial to captain his own ship of destiny. He rejected the suggestions of his defense team on sentencing. He composed his own lengthy, detailed unsworn statement, which he then read to the members. Affidavit of Michael Fasanaro, Esq. of 7 Jan 1998; Record at 1258–83. That unsworn statement, which was the lodestar of the sentencing case, occupies some 25 single-spaced pages of the record before us. It highlights not only the financial repercussions of dismissal, but also those arising from the mere fact of appellant's *conviction* by a general court-martial. Record at 1258–83. Appellant made it crystal clear that *what the members had done to him by convicting him* would ruin his future opportunities as a doctor of osteopathy. But more importantly to the issue here, he also made the point of

economic diminution related to the loss of his military retirement benefits. *Id.* at 1280–82. He now contends that the actions of his counsel were deficient and were the underlying cause of his array of punishments which included dismissal from the Naval service despite his retirement eligibility. We strongly disagree.

We find no indication that the ramifications of dismissal as a punishment were not clearly before the members and carefully considered by them in arriving at a sentence. First, the members were all *very* senior officers serving in the grade of Captain. While they were presented no numerical statistics on the specific dollar-value impact of dismissal, we find it beyond cavil that each was acutely aware of the critical economic impact of the decision to dismiss appellant. Moving beyond this fundamental foundation of the experience and maturity of the members themselves, we note that trial defense counsel's sentencing argument clearly focused on avoiding a dismissal as well. *Id.* at 1292–93. Thus, even though in hindsight appellant may have wished more redundancy of emphasis on this subject, we find a sufficient evidentiary predicate on the fiscal repercussions of dismissal in the record before us to avoid any imprimatur of ineffective assistance.

Appellant faced 39 years confinement, dismissal, and total forfeitures of pay and allowances. The Government argued for 25 years, a fine of $25,000, total forfeitures, and dismissal. The sentence imposed was so significantly below both the maximum possible sentence and the sentence urged by Government counsel that we are convinced that the members clearly understood and fully considered the impact of each possible punishment. Even if we were to find error in the actions of the trial defense team, we find no reasonable possibility of a different result had the monetary arguments now championed by appellant been made at trial. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

■ As to the second facet of appellant's argument, we remain unconvinced that failures on the part of his trial defense team forfeited the presence of valuable testimony that might have materially altered the find-

ings or sentence. Military practice allows the introduction of good military character evidence by the defense in order to create reasonable doubt about the allegations against an accused. *United States v. Benedict,* 27 M.J. 253 (C.M.A.1988); *United States v. Court,* 24 M.J. 11 (C.M.A.1987); *United States v. Belz,* 20 M.J. 33 (C.M.A. 1985). Making the tactical decision not to present such evidence, once counsel has ascertained its existence and evaluated its potential value, is absolutely legitimate. *See United States v. Christy,* 46 M.J. 47 (1997); *United States v. Marshall,* —— M.J. ——, No. 9700533 (N.M.Ct.Crim.App. 11 Mar. 1999). Appellant's individual civilian trial defense counsel contacted or attempted to contact each witness suggested by appellant. Affidavit of Michael Fasanaro, Esq. of 7 Jan 1998. We find that the decision to not offer character evidence in this case was a viable tactical decision given the "Pandora's box" of evidence the Government could have opened on cross-examination of these potential witnesses. Furthermore, the Government's case against appellant was overwhelming. Nothing in appellant's proffered affidavits would, even if considered on this issue, have altered the results at either the findings or sentencing stages of trial.[2] *Strickland,* 466 U.S. at 693, 104 S.Ct. 2052.

The record does not demonstrate that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. Appellant has not pointed to counsel errors so serious that they were not functioning as "counsel" as constitutionally guaranteed. He fails in the second *Strickland* prong as well, since we find no demonstrable evidence that he was deprived of a fair trial. *Id.; see also Lockhart v. Fretwell,* 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987). In short, appellant has failed to overcome the "strong presumption" of the competency of his trial defense team. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. The assigned errors concerning

effective assistance are without merit, and we deny relief.

### The Panel Selection Issue

#### Standards of Review

##### a. Conduct of Trial Counsel

■■■ Appellant next contends that the findings and sentence should be set aside because of the actions of the trial counsel concerning empanelling of the members. In assessing alleged prosecutorial misconduct, we review the military judge's relevant findings of fact under a "clearly-erroneous" standard. Once we determine the facts, we then review, *de novo,* his determinations as to prosecutorial misconduct and prejudicial error. *United States v. Argo,* 46 M.J. 454, 457 (1997). If we find prosecutorial misconduct, we review the record as a whole to determine whether the error was harmless. *Id.*

##### b. Command Influence

■■■ Similarly, we review the military judge's findings of fact on the issue of command influence and his conclusions of law based upon those facts using an identical two-step process, moving from a "clearly-erroneous" first level, to a *de novo* review at the second. *Id.* (citing *United States v. Wallace,* 39 M.J. 284, 286 (C.M.A.1994)). Appellant has the initial burden to raise unlawful command influence. Once raised, it creates a rebuttable presumption of prejudice, which can only be overcome by our finding beyond a reasonable doubt that it did not affect the findings and sentence. *Id.* (citing *United States v. Thomas,* 22 M.J. 388, 394 (C.M.A. 1986)).

#### Facts

■■■ We have reviewed the specific findings of fact entered below by the military judge concerning the conduct of trial counsel, and we ourselves conclude that they are accurate reflections of the evidence of record. We therefore adopt them as our own, and find as fact those matters contained at pages

---

2. Appellant seeks yet another opportunity to use the affidavits previously proffered and rejected by us on several past occasions. We once again decline to make them part of the appellate record. Appellant's Brief and Assignments of Error of 14 Aug 1997 at 46–47.

9–11 of Appellate Exhibit CXXXVI. A brief exposition of the relevant facts follows.

The lead trial counsel, Lieutenant Commander Schaff, was not a regular member of the trial bar serving appellant's command. He was regularly assigned to appellant's parent command, the Naval Hospital, as the special court-martial convening authority's Staff Judge Advocate (SJA). He was detailed to appellant's case as an *ad hoc* trial counsel. In all matters *other than appellant's case* LCDR Schaff remained the Naval Hospital Commander's SJA. Commander, Naval Base Norfolk, who convened this court-martial, designated another qualified officer in the Judge Advocate General's Corps, Commander James McPherson, to act as SJA for the Naval Hospital Commander in this case. Notice of this special designation was provided to appellant's individual civilian trial defense counsel below. Record at 459. That designation appears to have been without much impact on appellant's case.

The assignments of error relating to prosecutorial misconduct and unlawful command influence arose from LCDR Schaff's interactions with CDR Irvin, the SJA to Commander, Naval Base Norfolk, *following* LCDR Schaff's assignment as *ad hoc* trial counsel and CDR McPherson's assignment as *ad hoc* Hospital SJA for this case. When CDR Irvin determined a need for members senior in rank to appellant, he requested all subordinate special court-martial convening authorities to provide him with a list of names of members of their commands who qualified under that criteria. The reaction to that request on behalf of the Naval Hospital Commander came from LCDR Schaff. Instead of deferring the request to CDR McPherson as he might logically have done, LCDR Schaff "worked" the issue, obtaining, and ultimately providing, a list of all officers assigned to the Hospital who were senior in rank to appellant.

Had LCDR Schaff merely provided the list to CDR Irvin, our inquiry might end. That list was unquestionably a routine provision of fact-based information. Unfortunately, LCDR Schaff also provided *additional* information to CDR Irvin, including the fact that one of the members, Captain W, was

appellant's officer-in-charge and a possible witness. He further stated that a second officer, CAPT R, was pending disciplinary action, and a third, CAPT C, had an inventive flair with military uniforms, creating interservice ensembles which had caused LCDR Schaff to question whether CAPT C was actually a Naval officer, or was, instead, an imposter in the hospital. Record at 459–72; 1350. The first two disclosures (CAPTs W and R) clearly surfaced during pretrial motion litigation. *Id.* at 459. The latter information on CAPT C, was disclosed for the first time on the record during post-trial litigation. *Id.* at 1350. While appellant draws strong negative inferences from this bifurcated disclosure, we find no evidence that it was either a deliberate obfuscation or an event that caused any detriment to appellant's substantial rights at trial and on review. Art. 59(a), UCMJ.

### Legal Analysis

We find the conclusions of law entered below by the military judge to be correct. Following our careful *de novo* consideration, we specifically conclude that neither Articles 25(d) nor 37, UCMJ, were violated under the facts before us. We find that the military judge correctly held that because, "for whatever reason[,] civilian counsel did not act on the matter by pursuing a challenge to the selection of the panel" he has waived the issue. Appellate Exhibit CXXXVI at 8. We specifically decline to adopt appellant's argument that he did not know enough to question the process because LCDR Schaff had failed to mention CAPT C earlier.

We likewise do not find that appellant has met his initial burden in raising unlawful command influence under these facts. We conclude that the communication by LCDR Schaff to CDR Irvin concerning CAPTs W, C, and R, which was ultimately generally relayed to the convening authority, did not adversely affect appellant's rights to a fair trial. We conclude, as did the military judge below, that the matters contained as Conclusions a-h, at pages 12–13 of Appellate Exhibit CXXXVI, are correct, and we independently reach the identical conclusions of law as part of our *de novo* review.

LCDR Schaff provided *all* relevant names meeting the seniority criteria to CDR Irvin, and did not make panel selection recommendations. He merely provided information of a factual nature that he thought might be germane in the final selection decision made by the convening authority. We find no evidence that he was attempting to engineer a particular outcome in appellant's case, or even create a particular type or composition of the panel.

CDR Irvin later provided the information passed by LCDR Schaff to the convening authority. We find no evidence that the convening authority lost the required unfettered ability to appoint members to the panel as he saw fit. Nor does evidence appear that the convening authority either did not apply the criteria of Article 25(d), UCMJ, in arriving at his final selections or that the final selections were not made personally by him using those criteria. *See United States v. Marsh*, 21 M.J. 445 (C.M.A.1986); *United States v. Greene*, 20 C.M.A. 232, 43 C.M.R. 72, 77, 1970 WL 7433 (1970).

We are convinced that the actions by CDR Irvin and LCDR Schaff were not motivated by bad faith and did not impact appellant's fair trial rights. *See* Appellate Exhibit CXXXVI at 16 (a detailed exposition of the reasoning below which we find persuasive). We find no evidence of an intentional "panel stacking" like that condemned in *United States v. Hilow*, 32 M.J. 439 (C.M.A.1991). Appellant correctly points to *United States v. Marsh*, 21 M.J. 445, 447–49 (C.M.A.1986), as precluding trial counsel's role in the selection of members. We do not find evidentiary support for such a role being played here. While we certainly do not commend what trial counsel did as worthy of emulation, we find that the matters related were factual in nature. When LCDR Schaff felt obligated to surface the information known to him, he ought to have relayed his observations to CDR McPherson, rather than CDR Irvin. That much is clear.[3] He ought at least to have reminded CDR Irvin that he was not

the SJA for the Naval Hospital for this matter (although CDR Irvin should have known, since he was the SJA to the convening authority). That said, we do not find that LCDR Schaff's actions caused prejudice to any of appellant's substantial trial rights.

We also note that appellant did not (other than the single "challenge" prompted by the military judge not relevant here) challenge the members ultimately seated in his case, and that their *actual* impartiality remains unquestioned.

We find, as did our superior court in *United States v. Hamilton*, 41 M.J. 22, 27 (C.M.A. 1994), that trial counsel's actions created a "presumption of prejudice." But we find that not only has the Government overcome that presumption of prejudice, but also that appellant has neither articulated nor demonstrated any specific and articulable prejudice to his substantial rights. We likewise find none. Following our careful review and consideration of this issue, we simply find no substantial doubt cast upon the fairness or impartiality of appellant's trial. *United States v. Waldron*, 15 C.M.A. 628, 36 C.M.R. 126, 129, 1966 WL 4430 (1966).

The issue is without merit, and we deny relief on both conduct of counsel and command influence grounds.

## Pretrial Confinement Issues

Appellant asserts a two-pronged attack on his lengthy pretrial confinement. He first argues it violative of Article 13, UCMJ, in that he was illegally punished before trial. We find no support for his contentions in the record, and deny relief on that basis outright.

His second point relates to our earlier determination on his Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus, and is based upon the fact that our decision was grounded in affidavits submitted by appellant and the Government. We must determine whether a *DuBay* hear-

---

**3.** We do not quibble with the provision of factual information concerning members or prospective members which might possibly disqualify them to a convening authority or presiding judge. In fact, a logical reading of R.C.M. 502(f) requires

*any person* who discovers a member to be disqualified has an obligation to report that fact to the appropriate authority. While we applaud the message, we find wanting the chosen method of delivery.

ing[4] is required because of what appellant sees as "dueling" *ex parte* affidavits. Appellant contends that *United States v. Dykes*, 38 M.J. 270, 271 (C.M.A.1993) supports his position. We find it inapposite. We look for guidance to our superior court's ruling in *United States v. Johnson*, 43 M.J. 192, 194 (1995). As that court found under the facts and circumstances before it, we find here that "the affidavits considered in this case, together with the record of trial, provide a sufficient basis for ... determination without the need to resort to a *DuBay* hearing." *Id.* We therefore deny relief.

### Article 31 Warnings and Security Investigations

■ Appellant complains that he was not provided warnings under Article 31(b), UCMJ, when questioned overseas during a background security clearance investigation by an agent of the Naval Criminal Investigative Service (NCIS) who was acting for the Defense Investigative Service (DIS)(which is precluded from acting outside the United States). *See* Record at 500–515; 517–533. Under the circumstances, the NCIS agent was *not* engaged in law enforcement activities, and therefore fell outside the warnings mandates normally applied by NCIS relative to Naval servicemembers. *United States v. Payne*, 47 M.J. 37, 43 (1997). Disclosures made by appellant under such circumstances were voluntary, and related only to the possible grant or denial of a security clearance. Since all disclosures made by appellant were *exculpatory* in any event, we find no possible prejudice to appellant even had warnings been required. We find no merit in this assigned error, and deny relief.[5]

### Legal and Factual Sufficiency Issues

#### 1. General Considerations and Standard of Review

■ We must, in every case reviewed by us under Article 66(c), UCMJ, determine both the legal and factual sufficiency of the evidence. Our standards of review were succinctly stated in our superior court's opinion in *United States v. Turner*, 25 M.J. 324, 324–25 (C.M.A.1987). To be legally sufficient, we consider the evidence in the light most favorable to the prosecution. If we determine a reasonable factfinder could have found all the essential elements of the offenses of which an appellant stands convicted beyond a reasonable doubt, the test is met. As to factual sufficiency of the evidence, if we are, ourselves, convinced of an appellant's guilt of an offense beyond a reasonable doubt after carefully weighing the evidence in the record, and making allowances for not having personally observed the witnesses, then factual sufficiency is established. *Id.*

Appellant's attack on the sufficiency of the evidence relates to the convictions for taking indecent liberties with his minor daughter and making separately charged false statements to DIS and NCIS agents. In partial support of his attack on the indecent liberties conviction, appellant also argues error on the part of the military judge in admitting the testimony of another of appellant's daughters (J, an adult daughter from a previous marriage) on the issue of intent.

#### 2. Testimonial Evidence of Intent under R.C.M. 404(b)

■ We first review the allegation of error concerning the testimony admitted to demonstrate intent on the part of appellant concerning the indecent liberties alleged in his having bathed with his young daughter P. J, a daughter from appellant's first marriage, presented the questioned evidence. She testified that at about the age of 3–4 she was routinely bathed by her father, who refused to let her sit in the bathtub. While she stood, he used his hands to lather her, and while engaged in this course of conduct, would fondle her and digitally penetrate her vagina and anus. Record at 744, 768. This

---

4. *United States v. DuBay*, 17 C.M.A. 147, 149, 37 C.M.R. 411, 413, 1967 WL 4276 (1967).

5. While not "offended" by appellant's argument here, as was Government counsel, we do note that appellant argues opposite conclusions concerning the role of DIS and the duty to warn under Article 31(b), UCMJ, in his discussion of

Assignments of Error VI and XIV, respectively (admitting in the former discussion that under those circumstances no warnings are necessary). Appellant's Brief and Assignment of Errors of 14 Aug 1997 at 36; Government's Answer of 16 Mar 1998 at 48, n. 28.

conduct progressed over the years, and ultimately included physical brutality, rape by the age of 9–10, and caused her flight from the home as a teenager. *Id.* at 744–64.

While this testimony was admissible and relevant to the charged false official statements (in which appellant had denied ever physically or sexually abusing his family), the Government sought its specific consideration on the element of sexual gratification on the charge relating to bathing P. Appellate Exhibit LV. The Government's theory was that appellant's previous use of bathing to "condition" J to accept his aberrant sexual behavior was being repeated with P, years later under strikingly similar circumstances. The military judge ultimately ruled the evidence admissible under R.C.M. 404(b) to prove intent with regard to the indecent liberties specification relating to P. Record at 1136–37. He performed the required balancing between probative value and prejudicial impact, finding the former. *Id.*

We find the military judge's ruling to be correct following our own careful, *de novo* review. Such evidence has been found probative under similar circumstances by our superior court in well-reasoned opinions that aid us in our conclusions here. *United States v. Reynolds,* 29 M.J. 105, 109 (C.M.A. 1989); *United States v. Cox,* 18 M.J. 72, 74–75 (C.M.A.1984). We are convinced that the use of this testimony for the purposes of establishing an intent to gratify sexual desires is sound, and that it does not amount to a mere demonstration of criminal predisposition. *United States v. Acton,* 38 M.J. 330, 333 (C.M.A.1993). We are satisfied that the evidence here in question meets the three-part test enunciated in *Reynolds.* It first reasonably supports a finding that appellant committed the prior acts. It made more probable the existence of the requisite intent. And, as the military judge specifically found below, and we find here, the probative value outweighed the possible prejudice occasioned by the admission of the evidence for this purpose. *Reynolds,* 29 M.J. at 109.

We find an eerily similar bathing scenario and "conditioning" issue in our superior court's decision in *United States v. Acton,* 38 M.J. 330, 333 (C.M.A.1993); *Acton* was re-

solved along the lines we adopt here, with reasoning which parallels that which we find convincing. The facts surrounding the bathing of P which came from witnesses other than J are so strikingly similar to the facts elicited from J that they clearly support R.C.M. 404(b) admission here. We are not overly concerned about the period of years between the abuses visited upon J and her testimony in appellant's case. As our superior court in *United States v. Munoz,* 32 M.J. 359, 364 (C.M.A.1991) so clearly articulated:

> We must also reject appellant's particular claim of remoteness based on the occurrence of those acts ... years earlier. [citation omitted]. In this case the object of appellant's purported plan was the sexual abuse of his young daughters. Accordingly, the victim's age at the time of the offenses was the critical concern, not the period of time between the misconduct and the charged offenses....

Finally, we are confident that the very senior panel of members was able to clearly understand the nature and permitted uses of this testimony, since the military judge below gave comprehensive spillover and limiting instructions concerning the appropriate uses of the testimony. Record at 1198–99; 1202–03. Given the fact that the members acquitted appellant of a similar specification alleging abuse of P, and a lack of evidence to the contrary, we are convinced that the panel followed the military judge's instructions and arrived at appropriate findings based upon permitted uses of the evidence in question, using their powers of reason within the law and evidence before them. *United States v. Holt,* 33 M.J. 400, 408 (C.M.A.1991).

### 3. Sufficiency of the Indecent Liberties Evidence

■ Appellant's conviction of this offense is derived from circumstantial evidence. Such evidence is sufficient to support conviction. R.C.M. 918(c). The evidence came from another of appellant's grown daughters, HT. HT testified that she had witnessed P, appellant's daughter from a second marriage, being instructed to shower with her father, a process which took 30–45 minutes, and which clearly diminished P's previously outwardly happy emotional state when she at last

emerged. HT also testified that when P exited the bathroom, appellant was visible and naked. She stated that P was then told by her mother to return to the bathroom and dry appellant, and that her demeanor was downcast and quiet. When appellant emerged from the bathroom, a dialogue with P followed: "P, who loves you more than anyone else in the world?" P responded "Daddy does." Appellant then asked her: "Who loves you like no one else can?" P responded: "Daddy does." HT further testified that during this dialogue P was looking down and appeared to HT to be quite withdrawn. Record at 679–80.

We ourselves find beyond a reasonable doubt that the course of conduct described by HT provides ample factually and legally sufficient evidence to sustain this conviction. We are confident that the nature and circumstances of this encounter alone could have provided a sound basis for conviction. Furthermore, as we earlier indicated that J's testimony could be considered on the issue of intent for this offense, we find that the evidence provided by J further corroborates an already sufficient basis in fact and law. Despite all that appears to have stood in the way of J's success as a child and young adult, we found her testimony compelling in its candor, frankness, and chilling detail. Appellant's behavior appears as a mirror of itself spanning long periods of time, producing unbroken images of his aberrant and abhorrent conduct. We find proof clearly beyond a reasonable doubt of appellant's taking of indecent liberties with his minor daughter P.

### Statements to Agents of the Defense and Naval Criminal Investigative Services (DIS/NCIS)

 Appellant next complains that false statements he made to various agents were not "official." The statements in question were made independently at two separate times and locations, during the course of investigations incident to appellant's requests for security clearances. The nature of each

statement was a detailed and blanket denial of allegations of alcohol, sexual, and physical abuse by appellant. The evidence adduced at trial from appellant's former wife, his son, and the daughters abused by him over the years clearly supports the element of falsity. We find no basis to his assertion that the statements were not "official." We, likewise, find no evidence to support a contention that appellant intended any goal other than to deceive when making these statements. No genuine question as to the authenticity or execution of these statements by appellant appears in the record. In short, we find no lapse in the legal or factual sufficiency on either of the false official statement specifications. The error assigned concerning these offenses is without merit.[6]

### Polygraph Evidence

At trial, the Government offered, without objection, a 9–page handwritten statement made by appellant to NCIS. The last sentence of this document relates appellant's refusal to take a polygraph examination and his reasons for doing so. Prosecution Exhibit 2 at 9.

 We find error in the mention of appellant's refusal to take polygraph in the record before us. MIL.R.EVID. 707(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). We find no compelling reason why trial counsel did not assiduously avoid presenting it. We take this opportunity to remind practitioners of their obligation to diligently follow prescribed evidentiary rules. Furthermore, insofar as the admission of these documents was for a limited purpose, the military judge should have proposed redacting the offending language or provided a limiting instruction. However, appellant points to no particularized harm, and we find none. Under the facts and circumstances of this case, including the failure of the members to pursue any additional questioning in this regard, the overwhelming evidence of guilt in the record before us, and the passing mention of this test in a 9–page document,

---

6. We have carefully considered appellant's concerns as to the legal and factual sufficiency of his conviction for making a false official statement relating to his rebuttal to a finding that he was fit to perform his Navy duties. We find that assigned error without merit as well, and sustain the conviction.

we find the erroneous introduction of this evidence did not prejudice any substantial trial right. Art. 59(a), UCMJ. Furthermore, the failure of the defense counsel to object to the polygraph references supports our conclusion that there was no harm to appellant and no relief is warranted despite the error.

## Evidentiary Seizure Issues

### 1. The Computer Disk

■ Appellant next complains that the seizure of a privately-owned computer disk from a Government-owned computer located in an office he was authorized to use on a non-exclusive basis was unreasonable, and therefore that the contents of the disk were improperly admitted into evidence by the military judge. In support of his argument, appellant notes that at the time of the search and seizure, he was a Navy Captain who was provided an office and a computer in a "stash billet" away from his normal duty station. Appellant was authorized to use this office and computer to assist the preparation of his pending legal case. While using the computer to edit a document, he was called away from the office and apprehended for transport to pretrial confinement. Meanwhile, the Command Duty Officer (CDO) and two NCIS agents searched the office and, noticing the document on the computer screen appeared to be relevant to the investigation, seized the diskette containing it from the computer. The document was entirely exculpatory and entitled "Confidential Background Information on Accusations Made Against Me in Regards to Child Abuse ICO P While My Family and I Were House Guest (sic) of MP Aug 25 & 26."

The military judge held below that appellant's expectation of privacy was objectively unreasonable under the circumstances and admitted the materials as the product of a lawful search and seizure of Government property under Mil.R.Evid. 314(d) and 316(d)(3). Appellate Exhibit XLI at 4. Alternatively, the military judge ruled that the CDO had probable cause to seize the diskette when he observed the information on the computer screen in plain view. Appellate Exhibit XLI at 5. We have thoroughly reviewed the military judge's findings of fact on this issue, and conclude that none were clearly erroneous. We have concluded through our *de novo* review that the seizure was properly made under Mil.R.Evid. 314(d) and 316(d)(3).

■ Since both the office and the computer were officially made available to appellant for performance of official duties, his computer and office use were like other types of Government property routinely designated for or assigned to military personnel for performance of their official duties. One does not acquire a reasonable expectation of privacy in Government property designated or assigned under these circumstances even if capable of being secured and regardless of that person's status. *United States v. Muniz*, 23 M.J. 201, 204 (C.M.A.1987) (no reasonable expectation of privacy in Government-owned credenza in second-in-command's office to which only he and one other held the key); *United States v. Weshenfelder*, 20 C.M.A. 416, 43 C.M.R. 256, 261–62, 1971 WL 12773 (1971). "The omnipresent fact of military life, coupled with the indisputable government ownership and the ordinarily non-personal nature of military offices, could have left appellant with only the most minimal expectation—or hope—of privacy . . . ." *Muniz*, 23 M.J. at 206.

Furthermore, we conclude after our *de novo* review that the document was in plain view. Even if appellant had possessed a reasonable expectation of privacy in the diskette in the computer of the Government office, he would still not prevail. After appellant's apprehension, the CDO was in the logical and legitimate process of securing the office used by appellant. In so doing, the contents of the document stored on the diskette appeared on the computer screen in plain view. An examination of this document by the CDO gave him probable cause to seize it and he did so properly within the limits of Mil.R.Evid. 316(d)(4)(C).

■ The second issue is whether the taking of the document amounted to a violation of appellant's Sixth Amendment right to counsel by the Government.

The Sixth Amendment to the U.S. Constitution provides that an "accused shall enjoy the right ... to have the assistance of counsel for his defense." The Government violates this right when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct a defense. *See, e.g., United States v. Swetzer,* —— M.J. ——, No. 9602556 (N.M.Ct. Crim.App. 20 Jan. 1999). Our sister service court of criminal appeals and certain Federal circuits, citing the Supreme Court analysis in *Weatherford v. Bursey,* 429 U.S. 545, 554, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), have established four factors to consider in analyzing allegations that Government intrusions amounted to violations of the Sixth Amendment right to counsel: (1) Was evidence used at trial by the Government produced directly or indirectly by the intrusion? (2) Was the Government intrusion intentional? (3) Did the prosecution receive otherwise confidential information about trial preparations or defense strategy as a result of the intrusion? and (4) Was the information used in any other way to the substantial detriment of the accused? *United States v. Walker,* 38 M.J. 678 (A.F.C.M.R.1993); *United States v. Kelly,* 790 F.2d 130, 137 (D.C.Cir.1986); *United States v. Brugman,* 655 F.2d 540, 546 (4th Cir.1981).

 The exculpatory document discovered here was not used at trial. Nor do we find, contrary to the appellant's assertions, that the document ultimately led to preferral of charges or the discovery and presentation at trial of otherwise undiscoverable evidence. No detriment or prejudice has been established by appellant or discovered by us. This assignment of error is without merit.

### 2. Document Seizures from Appellant's Briefcase

 The military judge correctly found that appellant had standing to contest the seizure of documents from his closed, locked, personal briefcase, which was sitting in the vicinity of the desk in the office appellant was occupying. That said, we once again look to the facts found by the military judge below, and note that none were clearly erroneous. For the purposes of the second, legal determination on the admissibility of the documents under the facts below, we carefully reviewed those facts, circumstances, and applicable law as part of our *de novo* consideration. We conclude that appellant provided valid consent to search the briefcase, and that therefore the documents seized were properly admitted into evidence. *See* Appellate Exhibit XLI at 6. We also conclude that the documents would have been inevitably discovered, in any event. Appellant possessed only *copies* of original documents *in the possession of the Government.* While the military judge appears to have relied to some extent on the proffer of the assistant trial counsel, we are more convinced by the fact that there is a letter attached to the record in this case which clearly indicates that overtures had been made to widen the scope of inquiry concerning appellant *prior to the date of the search of the briefcase. See, e.g.,* Appellate Exhibit XXXVII. No prejudice followed the events of record below. No relief is warranted.

### Conclusion

Accordingly, we affirm the findings of guilty and the sentence, as approved on review below.

Senior Judge LEO and Judge TROIDL concur.